## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SALERNO MEDICAL ASSOCIATES, LLP,
SENIOR HEALTHCARE OUTREACH
PROGRAM, INC., and SM MEDICAL LLC,
individually and on behalf of all others similarly
situated,

       Plaintiffs,

v.

RIVERSIDE MEDICAL MANAGEMENT, LLC,
UNITEDHEALTHCARE COMMUNITY PLAN,
INC., OPTUM, INC., OPTUM CARE, INC.,
UNITEDHEALTH GROUP, INC.,
UNITEDHEALTHCARE INSURANCE
COMPANY and JOHNS DOE 1-20,

       Defendants.

Case No. 2:20-cv-10539 (KM)

**ORAL ARGUMENT REQUESTED**

**MOTION DAY: October 19, 2020**

## MEMORANDUM OF LAW SUPPORTING COMBINED
## MOTION TO DISMISS FOR LACK OF
## PERSONAL JURISDICTION, MOTION TO COMPEL ARBITRATION,
## AND ALTERNATIVELY, MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM

Steven L. Penaro
D.N.J. ID # 030182009
**ALSTON & BIRD LLP**
90 Park Ave
New York, NY 10016
Tel: 212-210-9460
Fax: 212-922-3960
steve.penaro@alston.com

Brian D. Boone
*Pro hac vice motion forthcoming*
**ALSTON & BIRD LLP**
Bank of America Plaza, Suite 4000
101 S. Tryon St.
Charlotte, NC 28280
Tel: 704.444.1000
Fax: 704.444.1111
brian.boone@alston.com

Lee A. Deneen
Fiona O'Carroll
Anderson S. B. Kemp
*Pro hac vice motions forthcoming*
**ALSTON & BIRD LLP**
1201 W. Peachtree St., Suite 4900
Atlanta, GA 30309

*Counsel for UnitedHealth Group, Inc.,*
*UnitedHealthcare Insurance Company, UnitedHealthcare Community Plan, Inc.,*
*Optum, Inc., Optum Care, Inc., and Riverside Medical Management, LLC*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

LEGAL STANDARDS ......................................................................................................5

ARGUMENT .....................................................................................................................6

I      THE COURT SHOULD DISMISS THE CLAIMS AGAINST FOUR UNITED DEFENDANTS FOR LACK OF PERSONAL JURISDICTION. ........................................7

II     THE COURT SHOULD COMPEL ARBITRATION. ..............................................9

     A.    The 2019 order binds the Plaintiffs. .........................................................9

     B.    The Court should equitably estop the Plaintiffs from spurning arbitration agreements while trying to recover money that they would have allegedly received only because of the providers' contracts that contain the arbitration agreements. ................................................................................................11

          1.    The Plaintiffs have already received benefits from their providers' contracts and are trying to recover more. .............................................12

          2.    The Plaintiffs' claims are premised on the contracts. ........................13

          3.    The arbitration agreements are enforceable and the Plaintiffs' claims are arbitrable. ...................................................................................16

III.    ALTERNATIVELY, THE COURT SHOULD DISMISS THE CLAIMS AGAINST ALL DEFENDANTS BECAUSE THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM..............................................................................17

     A.    The civil-conspiracy claim (Count I) is frivolous. ...................................17

     B.    The tortious-refusal-to-deal claim (Count II) is frivolous. .......................20

     C.    The Plaintiffs' unfair-competition claim (Count III) fails. .......................21

     D.    There are no factual allegations supporting any element of the Plaintiffs' unjust-enrichment claim (Count IV). ......................................................24

     E.    The Plaintiffs' tortious-interference claim (Count V) fails. .....................24

     F.    The Plaintiffs' misappropriation claim (Count VI) is frivolous. ...............28

G.      The Plaintiffs have no right to enforce the cited federal regulation. ............................28

CONCLUSION.................................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Teamsters Local 115*,
  214 F. App'x 167 (3d Cir. 2007) ..................................................................................18

*Advanced Health-Care Servs. v. Radford Cmty. Hosp.*,
  910 F.2d 139 (4th Cir. 1990)........................................................................................20

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)......................................................................................................28

*Am. Capital Acquisition Partners, LLC v. Fortigent, LLC*,
  No. 13-5571, 2014 U.S. Dist. LEXIS 38003 (D.N.J. Mar. 21, 2014) ...............................19

*Bayonne Drydock & Repair Corp. v. Wartsila N. Am., Inc.*,
  No. 12-819 (CCC), 2013 U.S. Dist. LEXIS 91089 (D.N.J. June 28, 2013) ......................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................2, 18

*Bellikoff v. Eaton Vance Corp.*,
  481 F.3d 110 (2d Cir. 2007) .....................................................................................28, 29

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
  137 S. Ct. 1773 (2017) ...................................................................................................5

*Burlington N. R.R. v. Hyundai Merch. Marine Co.*,
  63 F.3d 1227 (3d Cir. 1995).......................................................................................10, 11

*C.R. Bard, Inc. v. Wordtronics Corp.*,
  235 N.J. Super. 168, 561 A.2d 694 (Law Div. 1989)..........................................................21

*Cedra Pharmacy Houston LLC v. UnitedHealth Group*,
  No. H-17-3800, 2019 U.S. Dist. LEXIS 55827 (S.D. Tex. Mar. 7, 2019) ......................19

*Clemons v. Midland Credit Mgmt.*,
  1:18-cv-16883-NLH-AMD, 2019 U.S. Dist. LEXIS 123840 (D.N.J. July 25,
  2019).............................................................................................................................3

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984)................................................................................................19, 27

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
  748 F.3d 249 (5th Cir. 2014) .........................................................................................15

*D'Agostino v. Appliances Buy Phone, Inc.*,
    No. A-2005-13T1, 2016 N.J. Super Unpub. LEXIS 504 (Super. Ct. App. Div.
    Mar. 8, 2016)......................................................................................................24

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..........................................................................................7, 8

*Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*,
    No. A-2307-17T1, 2019 N.J. Super Unpub. LEXIS 1633 (Super. Ct. App. Div.
    July 16, 2019).....................................................................................................25

*Derbin v. Access Wealth Mgmt., LLC*,
    No. 11-cv-812, 2011 U.S. Dist. LEXIS 115992 (D.N.J. Oct. 7, 2011) ..............14

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
    No. 06-cv-3044, 2008 U.S. Dist. LEXIS 103526 (D.N.J. Dec. 23, 2008)..........19

*Doyle v. Ad Astra Recovery Servs.*,
    2018 U.S. Dist. LEXIS 35884 (D.N.J. Mar. 6, 2018) ......................................15

*Diversified Indus., Inc. v. Vinyl Trends, Inc.*,
    No. 13-6194 (JBS/JS), 2014 U.S. Dist. LEXIS 61131 (D.N.J. May 1, 2014)...................21

*E. Penn Sanitation v. Grinnell Haulers, Inc.*,
    294 N.J. Super. 158 (Super Ct. App. Div. 1996)..............................................27

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ......................................................................................15

*Frey v. City of Hoboken*,
    No. A-2918-15T4, 2018 N.J. Super. Unpub. LEXIS 1734 (Super. Ct. App. Div.
    July 19, 2018).....................................................................................................20

*Gavornik v. LPL Fin. LLC*,
    No. 14-955, 2014 U.S. Dist. LEXIS 107146 (D.N.J. Aug. 5, 2014) ..................27

*George v. Rushmore Serv. Ctr., LLC*,
    No. 18-cv-13698, 2020 U.S. Dist. LEXIS 82736 (D.N.J. May 11, 2020) .........15

*Gross v. Cormack*,
    586 F. App'x 899 (3d Cir. 2014) ......................................................................28

*Hirsch v. Amper Fin. Servs., LLC*,
    215 N.J. 174, 71 A.3d 849 (N.J. 2013) .............................................................12

*Horowitz v. AT&T Inc.*,
    No. 3:17-cv-4827, 2019 U.S. Dist. LEXIS 60 (D.N.J. Jan. 2, 2019)..................17

*IMO Indus. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998) .................................................................. 5, 6, 7

*In re Brown*,
  951 F.2d 564 (3d. Cir. 1991) ....................................................................... 11

*In-Flight Crew Connections, LLC v. Flight Crews Unlimited, Inc.*,
  No. 3:17-cv-00715, 2018 U.S. Dist. LEXIS 98420 (W.D.N.C. June 4, 2018) ................................... 7

*Interstate Realty Co., L.L.C. v. Sears, Roebuck & Co.*,
  No. 06-5997, 2009 U.S. Dist. LEXIS 35141 (D.N.J. Apr. 27, 2009) ................................ 25

*James v. City of Wilkes-Barre*,
  700 F.3d 675 (3d Cir. 2012) ........................................................................ 6

*Kernahan v. Home Warranty Adm'r of Fla., Inc.*,
  236 N.J. 301 (2019) .................................................................................. 17

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ............................................................................... 15

*loanDepot.com v. CrossCountry Mortg., Inc.*,
  No. 18-12091 (KM) (JBC), 2019 U.S. Dist. LEXIS 106518 (D.N.J. June 24, 2019) ................. 16

*MCI Telecomms. Corp. v. Graphnet, Inc.*,
  881 F. Supp. 126 (D.N.J. 1995) ................................................................... 20

*McLean v. HSBC Fin. Corp.*,
  No. 15-8974, 2016 U.S. Dist. LEXIS 136817 (D.N.J. Oct. 3, 2016) ................................ 14

*Mehler v. Terminix Int'l Co. L.P.*,
  205 F.3d 44 (2d Cir. 2000) ........................................................................ 16

*Nat'l Auto Div., LLC v. Collector's All., Inc.*,
  No. A-3178-14T3, 2017 N.J. Super Unpub. LEXIS 234 (Super. Ct. App. Div.
  Jan. 31, 2017). .................................................................................. 21, 24

*New Generation Devices, Inc. v. Slocum Enters.*,
  No. 04-2583 (KSH), 2005 U.S. Dist. LEXIS 28118 (D.N.J. Nov. 14, 2005) ...................... 8

*Nostrame v. Santiago*,
  213 N.J. 109 (2013) ................................................................................. 25

*Odishelidze v. Aetna Life & Cas. Co.*,
  853 F.2d 21 (1st Cir. 1988) ........................................................................ 20

*Precision Funding Grp. v. Nat'l Fid. Mortg.*,
  No. 12-cv-5054 (RMB/JS), 2013 U.S. Dist. LEXIS 76609 (D.N.J. May 31, 2013) ............... 14

*Rao v. Anderson Ludgate Consulting, LLC*,
No. 15-3126 (SRC), 2016 U.S. Dist. LEXIS 87771 (D.N.J. July 7, 2016) ........................................22

*Read v. Profeta*,
No. 15-cv-2637 (KM), 2017 U.S. Dist. LEXIS 4451 (D.N.J. Jan. 11, 2017).....................24, 25, 26

*Rothermel v. Int'l Paper Co.*,
163 N.J. Super. 235 (Super Ct. App. Div. 1978)............................................................................2, 20

*Salerno v. UnitedHealthcare Grp., Inc.*,
No. 2:19-cv-18130-KM-JBC (D.N.J.) ...............................................................................*passim*

*Sammarco v. Anthem Ins. Cos.*,
723 N.E.2d 128 (Ohio Ct. App. 1998)................................................................................................26

*Samsung Elecs. Am., Inc. v. Westpark Elecs., LLC*,
2016 N.J. Super. Unpub. LEXIS 2170 (Law Div. Sept. 29, 2016)....................................................26

*Saudi v. Acomarit Maritimes Servs., S.A.*,
114 F. App'x 449 (3d Cir. 2004) ........................................................................................................11

*Shearin v. E.F. Hutton Grp., Inc.*,
652 A.2d 578 (Del. Ch. 1994)............................................................................................................27

*Smith v. Bayer*,
564 U.S. 299 (2011) ............................................................................................................................18

*Telmark Packaging Corp. v. Nutro Labs. & Nature's Bounty*,
No. 05-3049, 2008 U.S. Dist. LEXIS 45 (D.N.J. Jan. 2, 2008) ..................................................22, 23

*Thieme v. Aucoin-Thieme*,
227 N.J. 269, 288 (2016)................................................................................................................2, 24

*Torlay v. Nelligan*,
No. 19-6589, 2019 U.S. Dist. LEXIS 159478 (D.N.J. Sept. 18, 2019)........................................12, 14

*Tris Pharma, Inc. v. UCB Mfg.*, No. A-5808-13T3, 2016 N.J. Super. Unpub. LEXIS
1982 (Super. Ct. App. Div. Aug. 29, 2016) ......................................................................................21

*United States v. Bestfoods*,
524 U.S. 51 (1998).................................................................................................................................8

*Walden v. Fiore*,
571 U.S. 277 (2014)....................................................................................................................*passim*

*White v. Smiths Detection, Inc.*,
No. 10–4078(KM), 2013 U.S. Dist. LEXIS 61387 (D.N.J. Apr. 29, 2013).......................................11

STATUTES

9 U.S.C. § 4 ...................................................................................................................5

42 U.S.C. § 1395w-22(j) ...................................................................................... 28, 29

42 U.S.C. § 1395w-27(d) ..............................................................................................29

42 U.S.C. § 1395w-27(g) ..............................................................................................29

42 U.S.C. § 1395y(b)(3)(A) ...........................................................................................29

RULES AND REGULATIONS

42 C.F.R. § 422.111(e) .........................................................................................passim

42 C.F.R. § 422.202(d) .........................................................................................passim

OTHER AUTHORITIES

Medicare Managed Care Manual, Ch. 4 at § 110.1.2, *available at*
    https://www.cms.gov/Regulations-and-
    Guidance/Guidance/Manuals/Downloads/mc86c04.pdf. ......................................*passim*

## INTRODUCTION

In early 2019, United notified certain healthcare providers that it was exercising its contractual right not to renew its Medicare Advantage and Medicaid contracts with them.[1] Later that year, the Plaintiffs—medical groups that employ healthcare providers—and some of the non-renewed providers sued United in this Court. *Salerno v. UnitedHealthcare Grp., Inc.*, No. 2:19-cv-18130-KM-JBC (D.N.J.). United asked the Court to compel arbitration under the providers' contracts with United; the Court granted the request, sent all the plaintiffs' claims to arbitration, and administratively closed the case. *Id.* Dkt. 25. Some of the providers later filed arbitrations against United, alleging most of the same claims raised in the 2019 case. The Plaintiffs now recycle those claims in this lawsuit.

The Court lacks personal jurisdiction over four of the defendants—UnitedHealth Group, Inc., UnitedHealthcare Community Plan, Inc., Optum, Inc., and Optum Care, Inc. Fed. R. Civ. P. 12(b)(2). None of those defendants is a New Jersey citizen, so none is at home here. Nor do the Plaintiffs allege facts showing that any of those defendants has suit-related contacts creating a "substantial connection with the forum State," as required for specific jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014).

That leaves only the Plaintiffs' claims against UnitedHealthcare Insurance Company and Riverside Medical Management. This Court held last year that those claims belong in arbitration. The Plaintiffs—which were plaintiffs in the 2019 case—had no basis for ignoring the Court's order and re-filing the same case in state court.

Even if the Court took a fresh look at the issue, it would reach the same result. The Plaintiffs seek to recover money that they would have allegedly received only because of their providers' contracts with UnitedHealthcare. But even while the Plaintiffs invoke certain parts of those contracts (concerning reimbursement for services and network participation), they try to avoid others (the arbitration agreement). The Court should equitably estop the Plaintiffs from disregarding the contracts' arbitration agreements and should compel arbitration. The Court should also equitably estop the Plaintiffs from denying arbitration vis-à-vis Riverside Medical Management because their

---

[1] For simplicity's sake, we sometimes refer to all defendants collectively as "United." We also sometimes refer to individual defendants by their legal names.

claims against Riverside are intertwined with the claims against UnitedHealthcare and are premised on the providers' contracts.

If the Court did not compel arbitration, then it would need to dismiss the claims against all remaining defendants because there are no factual allegations supporting a plausible claim for relief.

1.   The Plaintiffs' conspiracy claim concerning Riverside Medical Management fails because there are no factual allegations plausibly suggesting that Riverside conspired with any defendant to do *anything*, much less to commit a tort. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] bare assertion of conspiracy will not suffice."). The claim would also fail because the law is clear that United cannot conspire with itself and because there is no predicate tort.

2.   The Plaintiffs' tortious-refusal-to-deal claim fails because UnitedHealthcare exercised a contractual right to non-renew the providers' contracts. No case suggests that a party commits a tort in those circumstances: "Basic to our free enterprise system is the right to enter or to refrain from entering or continuing a contractual relationship." *Rothermel v. Int'l Paper Co.*, 163 N.J. Super. 235, 244 (Super Ct. App. Div. 1978).

3.   The Plaintiffs also allege that United engaged in unfair competition, but that claim fails because many New Jersey courts don't recognize a claim for unfair competition, and even those that do have cabined the claim to misappropriation theories. The Plaintiffs have no claim for misappropriation: They allege that United misappropriated its own plan members' names and addresses by notifying those members that their provider was leaving United's network, but United cannot have misappropriated information that was already in its possession. Nor was that information proprietary to the Plaintiffs. The Plaintiffs also ignore that a federal regulation required United to notify plan members that their provider was leaving United's network. 42 C.F.R. § 422.111(e).

4.   The Plaintiffs' unjust-enrichment claim is frivolous. The Plaintiffs have pleaded no factual allegations suggesting that they conferred a benefit on any defendant, that it would be unjust for a defendant to retain that unidentified benefit, or that the supposed benefit "enriched [a] defendant beyond its contractual rights." *Thieme v. Aucoin-Thieme,* 227 N.J. 269, 288 (2016).

5.   The Plaintiffs also allege that United tortiously interfered with the Plaintiffs' relationships "with their Providers and patients" (Dkt. 10-1, Compl. ¶ 137), but there are no factual allegations suggesting how United intentionally interfered with either set of relationships—let alone factual allegations showing that United did so with the required "malice." For good reason: United cannot have interfered with its own plan members' relationships with the providers.

6.   The Plaintiffs' separate claim that United misappropriated trade secrets or other confidential information fails for the same reasons as the unfair-competition claim. United cannot have misappropriated its own plan members' names and addresses by sending them notices that a federal regulation required.

## **BACKGROUND**

The Plaintiffs in this case—Salerno Medical Associates, LLP, Senior Healthcare Outreach Program, Inc., and SM Medical LLC—are medical groups that employ one or more healthcare providers whom United non-renewed in 2019 in accordance with the parties' contracts. *Cf.* Dkt. 10-1, Compl. ¶ 1. At different times over the past few years, those providers entered into contracts with UnitedHealthcare Insurance Company that allowed them to serve as in-network providers for United's beneficiaries in Medicare and Medicaid lines of business. *Id.* ¶¶ 12, 15, 20. The contracts contain a comprehensive arbitration agreement requiring the parties to arbitrate "all disputes" "on an individual basis." Ex. A, Nielsen Decl. Ex. 1 at 5–6.

Each provider's contract governs the terms of their relationship with United. *Cf., e.g.* Dkt. 10-1, Compl. ¶ 110. Under the contract, either party may non-renew the contract effective on its anniversary date by giving 90 days' notice. *See, e.g.*, Ex. A, Nielsen Decl. Ex. 1 at 5.[2] Last year, United exercised that right by notifying certain providers that it was non-renewing their contracts on the

---

[2] The Plaintiffs did not attach their providers' contracts to the Complaint, but the Plaintiffs' claims are premised on the contracts, referencing the contracts many times. *See, e.g.*, Dkt. 10-1, Compl. ¶¶ 37, 41, 44, 59–61, 63, 110. The Court may consider the contracts for purposes of United's motion to compel arbitration and its motion to dismiss. *See, e.g.*, *Clemons v. Midland Credit Mgmt.*, 1:18-cv-16883-NLH-AMD, 2019 U.S. Dist. LEXIS 123840, at *4–5 (D.N.J. July 25, 2019) ("Even though Plaintiff's complaint does not attach the agreement that contains the arbitration provision at issue, the Court may consider the agreement . . . .").

anniversary dates. Dkt. 10-1, Compl. ¶¶ 1, 40. In accordance with federal regulations (*see* 42 C.F.R. § 422.111(e)), United also mailed letters to its plan members explaining that their providers would no longer participate as in-network providers. As required, United listed other potential in-network providers in those letters. *See* Medicare Managed Care Manual, Ch. 4 at § 110.1.2.3, *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/mc86c04.pdf.

In September 2019, the Plaintiffs and some of their providers filed a putative class action in this Court against the same defendants that they sue in this case (along with several others). In that case, like in this one, the plaintiffs argued that United acted wrongfully by non-renewing the providers' contracts. *See* Dkt. 1 ¶¶ 81–88, 142, 149, 151, 158, *Salerno*, No. 2:19-cv-18130. And in that case, like in this one, the plaintiffs alleged claims for civil conspiracy, tortious interference, unfair competition, and "tortious refusal to deal," among other claims. *Id.* pp. 34–41. The plaintiffs also moved for a temporary restraining order. *Id.* Dkt. 1-1.

In response, United explained that the Court should order all plaintiffs to arbitrate their claims in accordance with the providers' contracts. Dkt. 4 at 6–11, *Salerno*, No. 2:19-cv-18130. On October 11, the Court entered a standstill order that gave all plaintiffs 30 days to file arbitrations. *Id.* Dkt. 25. The Court drew no distinction between the plaintiff-providers and the plaintiff-medical groups. *Id.*

In the following months, several providers filed individual arbitrations against United. Dkt. 10-1, Compl. ¶¶ 3, 54. The Plaintiffs here—the providers' medical groups—did not file individual arbitrations. But almost a year after filing their September 2019 class action, the Plaintiffs filed this copy-cat class action in New Jersey Superior Court. The Complaint looks nearly identical to last year's complaint except that the individual providers are no longer parties and the Plaintiffs have dropped their cause of action under federal Medicare Advantage regulations (even as they continue to allege violations of the federal regulations). *See, e.g.*, *id.* ¶ 126.

The Plaintiffs purport to represent the following class of medical groups:

[A]ll Medical Groups in New Jersey who do not have direct contracts with United and who, during the relevant class period, had Providers who were notified that they would be removed from the plan by United without cause when their individual Provider Contracts expire(d), who had patients receive letters from United notifying them that

their Providers were being deselected from the Plan and/or who otherwise suffered damages as a result of [United's] interference with their relationships with their Providers, their patients and Providers from other Medical Groups.

Dkt. 10-1, Compl. ¶ 110.

The United defendants named in the original Complaint—UnitedHealthcare Insurance Company, UnitedHealth Group, Inc., Optum, Inc., Optum Care, Inc., and UnitedHealthcare Community Plan, Inc.—waived service of the Complaint effective August 10. Dkt. 10 ¶ 37 (Amended Removal Notice). Four days later, those defendants removed the case to this Court. Dkt. 1. They also filed an Amended Notice of Removal on August 19. Dkt. 10; *see also* Dkt. 14-1 (errata).

On August 27, the United defendants filed a combined motion to dismiss and motion to compel arbitration. Dkt. 15. They explained, among other things, that one of the named defendants— Riverside Medical Group, LLC—is not part of United's corporate family and does not exist. Dkt. 15-2, Nielsen Decl. ¶¶ 8–9. On September 16, the Plaintiffs asked for leave to amend the Complaint to add "Riverside Medical Management"—which is part of United's family—as a defendant in place of Riverside Medical Group. Dkt. 17. Riverside waived service of the Complaint effective September 16. *Id.* On September 17, the Court entered the Plaintiffs' proposed order, amending the Complaint and setting a briefing schedule for United's combined motion to dismiss the amended Complaint and motion to compel arbitration. Dkt. 18.

## LEGAL STANDARDS

United's motion implicates multiple standards.

1.  In New Jersey, a court may exercise personal jurisdiction over a non-resident defendant only to the limits of the Due Process Clause, so the question under New Jersey's long-arm statute (N.J. Ct. R. 4:4-4) is whether the defendant has enough minimum contacts with the State to "comply with traditional notions of fair play and substantial justice." *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). "A court with general jurisdiction may hear any claim against [a] defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017). Specific jurisdiction, on the other hand, exists only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State."

*Walden*, 571 U.S. at 284. "[T]he plaintiff bears the burden to prove, by a preponderance of evidence, facts sufficient to establish personal jurisdiction." *Kiekert AG*, 155 F.3d at 257.

2.   Under the Federal Arbitration Act, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court" having jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. There is a "strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Accordingly, courts will bind a non-signatory to an arbitration agreement when the non-signatory "knowingly exploits" the contract containing that agreement. *Neal v. Asta Funding, Inc.*, Civ. No. 13-6981 (KM) (MAH), 2016 U.S. Dist. LEXIS 85163, at *54 (D.N.J. June 30, 2016). And when "the affirmative defense of arbitrability [is] apparent from the face of the complaint and the documents relied upon therein," the Court reviews the motion to compel arbitration under the 12(b)(6) standard. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117–18 (3d Cir. 2015).

3.   To survive a Rule 12(b)(6) motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 246 (3d Cir. 2010). Facts that are "merely consistent with liability" are insufficient to establish a plausible claim. *Argueta v. United States Immigration & Customs Enf't*, 643 F.3d 60, 73 (3d Cir. 2011) (citation omitted). "[The Court is] not bound to accept as true a legal conclusion couched as a factual allegation." *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) (citation omitted).

## **ARGUMENT**

The Court lacks personal jurisdiction over four of the six defendants, so it should dismiss the claims against those defendants. Having done that, the Court should compel the Plaintiffs to arbitrate their claims against UnitedHealthcare Insurance Company and Riverside Medical Management. The Court already did so last year, and that ruling has preclusive effect. Even if it didn't, the Court should estop the Plaintiffs from denying arbitration while trying to reap benefits from contracts containing an arbitration agreement.

If the Court did not compel arbitration, then it should dismiss the claims against UnitedHealthcare Insurance Company, Riverside Medical Management, and any remaining defendants because the Plaintiffs have failed to state a plausible claim for relief.

## I  THE COURT SHOULD DISMISS THE CLAIMS AGAINST FOUR DEFENDANTS FOR LACK OF PERSONAL JURISDICTION.

The Court lacks both general and specific jurisdiction over four defendants—UnitedHealth Group, Inc., UnitedHealthcare Community Plan, Inc., Optum, Inc., and Optum Care, Inc. *Cf.* Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction).

General jurisdiction exists only if a business "is fairly regarded as at home" in a state. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). In most cases, "home" is limited to a company's place of incorporation and "principal place of business." *Id.*

UnitedHealth Group, UnitedHealthcare Community Plan, Optum, Inc., and Optum Care are not at home in New Jersey. The Plaintiffs don't identify those defendants' state of incorporation or principal place of business. *In-Flight Crew Connections, LLC v. Flight Crews Unlimited, Inc.*, No. 3:17-cv-00715, 2018 U.S. Dist. LEXIS 98420, at *5 (W.D.N.C. June 4, 2018) (disregarding general jurisdiction argument because the plaintiff "d[id] not allege Defendant is a resident of or has its principal place of business in" the forum state). In any event, each defendant is incorporated and has its principal place of business in states other than New Jersey: UnitedHealth Group, Inc. is a Delaware corporation with its principal place of business in Minneapolis, Minnesota; UnitedHealthcare Community Plan, Inc. is a Michigan corporation with its principal place of business in Southfield, Michigan; Optum, Inc. is a Delaware corporation with its principal place of business in Eden Prairie, Minnesota; and Optum Care, Inc. is a Delaware corporation with its principal place of business in Minnetonka, Minnesota. Ex. A, Nielsen Decl. ¶¶ 4–7. The Court lacks general jurisdiction over those defendants.

The Court also lacks specific jurisdiction, which exists only if a plaintiff's claims "arise out of" a "substantial connection" between a defendant and the forum. *Walden*, 571 U.S. at 284; *see also Kiekert AG*, 155 F.3d at 259. As the Supreme Court explained in *Walden*, the plaintiff's claims "must *arise out of* contacts that the defendant *himself*"—not a plaintiff, not a third party—"creates with the forum

State." 571 U.S. at 284 (emphasis added). "Jurisdiction under the New Jersey long-arm statute, N.J. Ct. R. 4:4-4(c), is co-extensive with the due process requirements of the United States Constitution." *New Generation Devices, Inc. v. Slocum Enters.*, No. 04-2583 (KSH), 2005 U.S. Dist. LEXIS 28118, at *7 (D.N.J. Nov. 14, 2005). The Plaintiffs have not alleged facts satisfying those requirements.

The Plaintiffs do not mention UnitedHealth Group except to identify the defendants in the Complaint's prefatory paragraph and to allege that UnitedHealth Group is the other defendants' ultimate parent company. *See* Dkt. 10-1, Compl. p. 2 and ¶ 85. The allegations against Optum, Inc. and Optum Care are no better: The Plaintiffs allege only that "RMG was purchased by Optum Care in or about 2016" (*id.* ¶ 23), that Optum, Inc. owns Optum Care (*id.* ¶ 24), and that UnitedHealth Group is Optum Care's ultimate parent corporation. *Id.* ¶ 85. None of those allegations shows that the Plaintiffs' claims "arise out of" a "substantial connection" between New Jersey and UnitedHealth Group, Optum, Inc., or Optum Care. Nor does the Plaintiffs' speculation that United "steered" patients to Riverside providers. *Id.* ¶ 90. That conclusory allegation doesn't show specific jurisdiction over UnitedHealth Group, Optum, Inc., or Optum Care because there are no factual allegations concerning those companies' alleged conduct or connecting that unidentified conduct to New Jersey. *Walden*, 571 U.S. at 285 ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").

Nor may the Plaintiffs rely on allegations against other defendants to establish specific jurisdiction over UnitedHealth Group, Optum, Inc., and Optum Care. A parent corporation is not subject to personal jurisdiction in a state simply because its subsidiary does business there. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*, 735 F. Supp. 2d 277, 317–18 (W.D. Pa. 2010) ("The parent-subsidiary relationship itself is not sufficient to establish in personam jurisdiction over the parent entity."); *see also Daimler*, 571 U.S. at 136 (similar). Nor is an allegation against a subsidiary enough to state a claim against a parent company. *See Bestfoods*, 524 U.S. at 61.

The Court also lacks specific jurisdiction over UnitedHealthcare Community Plan, Inc. The Plaintiffs allege that the named entity contracted with their providers' plan-member patients and that

the providers were in-network with that entity (Dkt. 10-1, Compl. ¶¶ 12, 15, 20), but they are wrong on both counts. Two different corporations—Oxford Health Plans (NJ), Inc. and AmeriChoice of New Jersey, Inc.—administer United's dual-complete plan and Medicaid products in New Jersey and contract with plan members. Ex. A, Nielsen Decl. ¶ 11. Those entities sometimes do business under the "UnitedHealthcare Community Plan" trade name, but they are not the same entity as UnitedHealthcare Community Plan, Inc. (a Michigan corporation). *Id.* There are no factual allegations showing that the Plaintiffs' claims "arise out of" a "substantial connection" between UnitedHealthcare Community Plan, Inc. and New Jersey. *Walden*, 571 U.S. at 284.

The Court should dismiss the claims against UnitedHealth Group, Inc., UnitedHealthcare Community Plan, Inc., Optum, Inc., and Optum Care, Inc. for lack of personal jurisdiction.

## II   THE COURT SHOULD COMPEL ARBITRATION.

The Court should also compel the Plaintiffs to arbitrate their claims against UnitedHealthcare Insurance Company and Riverside Medical Management (and any other United defendant if the Court finds that it has personal jurisdiction over the defendant). The Court's 2019 order precludes the Plaintiffs from litigating their claims in court, but even if it didn't, the same result would obtain under equitable-estoppel principles.

### A.   The 2019 order binds the Plaintiffs.

In October 2019, the Court referred to arbitration all plaintiffs' claims in *Salerno*, No. 2:19-cv-18130. The Court did so based on the following arbitration agreement in the plaintiff-providers' contracts with UnitedHealthcare Insurance Company, which it executed "on behalf of itself, AmeriChoice of New Jersey, Inc. and its other affiliates":

> We will resolve all disputes between us by following the dispute procedures set out in our Provider Manual. If either of us wishes to pursue the dispute beyond those procedures, they will submit the dispute to binding arbitration in accordance with the Commercial Dispute Procedures of the American Arbitration Association (see http://www.adr.org) within one year.
>
> We both expressly intend that any dispute between us be resolved on an individual basis so that no other dispute with any third party(ies) may be consolidated or joined with our dispute. We both agree that any arbitration ruling by an arbitrator allowing class action arbitration or requiring consolidated arbitration involving any third

party(ies) would be contrary to our intent and would require immediate judicial review of such ruling. The arbitrator will not vary the terms of this agreement and will be bound by governing law. We both acknowledge that this agreement involves interstate commerce, and is governed by the Federal Arbitration Act, 9 USC 1 et seq. The arbitrator will not have authority to award punitive or exemplary damages against either of us, except in connection with a statutory claim that explicitly provides for such relief. Arbitration will be conducted in Essex County, NJ.

If a court allows any litigation of a dispute to go forward, we both waive rights to a trial by jury with respect to that litigation, and the judge will be the finder of fact. Any provision of this agreement that is invalid or unenforceable shall not affect the validity or enforceability of the remaining provisions of this agreement or the validity or enforceability of the offending provision in any other situation or in any other jurisdiction. This section of the agreement governs any dispute between us arising before or after execution of this agreement and this section shall survive and govern any termination of this agreement.

Ex. A, Nielsen Decl. Ex. 1 at 5–6.[3]

The Court was correct to refer the 2019 plaintiffs' claims to arbitration—and that order binds the Plaintiffs, all of which were named plaintiffs in last year's case. *Salerno*, No. 2:19-cv-18130. Issue preclusion has four elements: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995); *see also id.* at 1231 ("later courts should honor the first actual decision of a matter that has been actually litigated"). All four are met here.

*First*, both cases present the same questions about arbitration under the same provider contracts—including whether the Plaintiffs must arbitrate their claims against United and whether an arbitrator must decide any threshold questions about the arbitration agreement's enforceability.

*Second*, the parties briefed and argued the arbitration question last year (Dkts. 1-1, 4, *Salerno*, No. 2:19-cv-18130); the Court entertained oral argument on October 4, 2019; and the Court entered an order on October 11 referring all plaintiffs' claims to arbitration for an initial determination of arbitrability. *Id.* Dkt. 25; *see also id.* Dkt. 21 at 29 (transcript) (the Court: "I find [the arbitration

---

[3] *See also* Ex. A, Nielsen Decl. Ex. 1 at 7 (the parties' affirming that they understood the dispute resolution procedures described in the section of this agreement entitled "What if we do not agree"); *id.* ("**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION THAT MAY BE ENFORCED BY THE PARTIES.**") (emphasis in original).

agreement] clear enough and more. I mean, it refers to the AAA. It cites you to the AAA website. It is very much clear enough of an invocation of the rules of the AAA . . . .").

*Third*, the order compelling arbitration is sufficiently final. For purposes of issue preclusion, "final judgment" means any prior adjudication of an issue in another action that is "sufficiently firm to be accorded preclusive effect." *Burlington*, 63 F.3d at 1233 n.8 (citing *In re Brown*, 951 F.2d 564, 569 (3d. Cir. 1991)). In its 2019 order, the Court compelled arbitration and terminated the case, which left nothing else for the Court to decide. *See In re Brown*, 951 F.2d at 569 ("[f]inality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts," and "[f]inality may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again"). As important, "[i]ssue preclusion may apply to non-merits judgments which are conclusive as to those matters actually adjudged." *Saudi v. Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 454 (3d Cir. 2004). That was true of this Court's order compelling arbitration.

*Fourth*, the Court's decision that the plaintiffs had to arbitrate their claims—and any questions about arbitrability—was essential to its judgment referring those claims to arbitration.

The Court's 2019 order deserves preclusive effect, but the Court may also reach the same result under the law-of-the-case doctrine. *Cf. White v. Smiths Detection, Inc.*, No. 10–4078(KM), 2013 U.S. Dist. LEXIS 61387, at *50–53 (D.N.J. Apr. 29, 2013) (The "law-of-the-case doctrine 'limits relitigation of an issue once it has been decided' in the same litigation."). These proceedings are nearly identical to last year's proceedings: Both concern the same subject matter, turn on the same provider contracts, involve many of the same plaintiffs and defendants, and include almost all of the same claims. There is no reason why the Plaintiffs should get a do-over.

**B. The Court should equitably estop the Plaintiffs from spurning arbitration agreements while trying to recover money that they would have allegedly received only because of the providers' contracts that contain the arbitration agreements.**

In any case, the same result would obtain even if the Court had not already referred the Plaintiffs' claims to arbitration. "[A] non-signatory may be bound to an arbitration agreement under

the theory of equitable estoppel, if found to have 'reaped the benefits' of the contract containing the arbitration clause." *Neal*, 2016 U.S. Dist. LEXIS 85163, at *53–54 ("courts have held nonsignatories to an arbitration clause when the non-signatory knowingly exploits the agreement"); *Torlay v. Nelligan*, No. 19-6589, 2019 U.S. Dist. LEXIS 159478, at *10 (D.N.J. Sept. 18, 2019) (same). "A non-signatory can be bound under th[e] 'knowingly exploits' theory where it 'embraces the agreement and directly benefits from it'"—including "(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce terms of that contract or asserting claims based on the contract."[4] *Neal*, 2016 U.S. Dist. LEXIS 85163, at *54. Both theories apply, so the Plaintiffs must arbitrate their claims against United.

### 1. The Plaintiffs have already received benefits from their providers' contracts and are trying to recover more.

The first theory applies because the Plaintiffs are "knowingly seeking" and trying to "obtain[] direct benefits from th[e] contract." *Neal*, 2016 U.S. Dist. LEXIS 85163, at *54. The Plaintiffs allege that they have already received significant benefits under the contracts because they ostensibly shared in the revenue that their providers received. *See* Dkt. 10-1, Compl. ¶ 3 (alleging that the Plaintiffs "share[d] in the revenues their Providers generate from participating in the Plan"). The Plaintiffs also allege that United pays some of the medical groups directly under the provider contracts: "The Medical Groups either are paid directly by United with the Medical Groups paying their Providers a salary and/or based upon productivity, or the Providers are paid directly by United and their Medical Groups share in the revenues generated by their Providers." *Id.* ¶ 28. Equitable estoppel applies in those circumstances: "[W]here a non-signatory has benefited from the contractual relationship between the signatory parties, that non-signatory may be estopped from denying arbitration." *Neal*, 2016 U.S. Dist. LEXIS 85163, at *55.

---

[4] The Plaintiffs' counsel—Mr. Adler and Ms. Topelsohn—represented the party in *Neal* that argued that the Court should estop a non-signatory from denying an arbitration agreement. The Court applied New Jersey law and held that the other party was bound to arbitrate under that theory. *Neal*, 2016 U.S. Dist. LEXIS 85163, at *54–56 (citing, *e.g.*, *Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 71 A.3d 849, 859–60 (N.J. 2013)).

Regardless, the Plaintiffs are trying to recover more benefits—allegedly lost revenue—flowing directly from the providers' contracts. *See, e.g.*, Dkt. 10-1, Compl. ¶ 1 (alleging that United non-renewed "one or more of [the Plaintiffs'] healthcare providers . . . who generate revenues from United *for their Medical Groups*") (emphasis added); *see also id.* ¶ 3 (alleging that the contract non-renewals resulted in "separate damages" to the Plaintiffs because "they share in the revenues their Providers generate from participating in the Plan"). By the Plaintiffs' theory, they would have received that revenue only because of their providers' contracts with United; without those contracts, this lawsuit would not exist. *See, e.g.*, *Bayonne Drydock & Repair Corp. v. Wartsila N. Am., Inc.*, No. 12-819 (CCC), 2013 U.S. Dist. LEXIS 91089, at *6 (D.N.J. June 28, 2013) (applying equitable estoppel when non-signatory benefitted from contract because without the contract, the non-signatory would not have performed the work at issue). The Court should equitably estop the Plaintiffs from seeking damages and other benefits from the contracts while ignoring those contracts' arbitration agreements.

### 2.  The Plaintiffs' claims are premised on the contracts.

For similar reasons, the Court should also equitably estop the Plaintiffs because they are "asserting claims based on the contract." *Neal*, 2016 U.S. Dist. LEXIS 85163, at *54. The Plaintiffs' claims are premised on the reimbursement relationship between United and the providers. *See, e.g.*, Dkt. 10-1, Comp. ¶ 126 (alleging that United tortiously refused to deal with the Plaintiffs by non-renewing their providers' contracts); *id.* ¶ 130 (alleging that United unfairly competed by non-renewing the contracts). Again, the Plaintiffs allege that United harmed them by non-renewing their providers' contracts and allegedly depriving the Plaintiffs of revenue that they would have received only because of the contracts' reimbursement provisions. *See, e.g.*, Dkt. 10-1, Compl. ¶¶ 1, 3. Indeed, Exhibit A to the Complaint is one of United's letters non-renewing a provider contract. *Id.* Ex. A. On top of that, the Plaintiffs define their putative class by reference to the providers' contracts. *Id.* ¶ 110 (putative class includes groups that "had Providers who were notified that they would be removed from the Plan by United without cause when their individual Provider Contracts expire(d).").

The Plaintiffs cannot have it both ways. Equitable estoppel prevents "a non-signatory [from] seek[ing] enforcement of certain contractual provisions while at the same time turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *Neal*, 2016 U.S. Dist. LEXIS 85163, at *57; *id.* (non-signatory may not "attempt[] to use the contract as a sword at the same time as using his non-signatory status as a shield"); *Torlay*, 2019 U.S. Dist. LEXIS 159478, at *11 ("Equitable estoppel seeks to prevent this kind of gamesmanship."). Nor does it matter that the Plaintiffs allege tort claims instead of contract claims. Each claim hinges on UnitedHealthcare's contract non-renewals and the money that the Plaintiffs would have allegedly received under the contracts but for the non-renewals. *See McLean v. HSBC Fin. Corp.*, No. 15-8974, 2016 U.S. Dist. LEXIS 136817, at *8–9 (D.N.J. Oct. 3, 2016) (equitably estopping a plaintiff from denying arbitration "[n]otwithstanding Plaintiff's presentation of her Complaint as a separate tort action").

UnitedHealthcare aside, equitable estoppel also requires the Plaintiffs to arbitrate their claims against Riverside Medical Management (and against the other defendants if the Court had personal jurisdiction over them). "New Jersey recognizes a non-signatory['s] right to compel arbitration based on the principle of equitable estoppel." *Derbin v. Access Wealth Mgmt., LLC*, No. 11-cv-812, 2011 U.S. Dist. LEXIS 115992, at *11 (D.N.J. Oct. 7, 2011); *McLean*, 2016 U.S. Dist. LEXIS 136817, at *8 (non-signatory properly compelled signatory to arbitrate claims under equitable-estoppel principles); *Torlay*, 2019 U.S. Dist. LEXIS 159478, at *9 n.1 ("New Jersey . . . recognize[s] that a signatory to a contract may compel a non-signatory, *and vice versa*, to arbitrate under certain circumstances by means of equitable estoppel.") (emphasis added).  That principle applies "in at least two situations": "First, a non-signatory may compel arbitration when the issues to be litigated are inextricably intertwined with the arbitration agreement such that the claims asserted against the signatory and the non-signatory are identical. A non-signatory may also compel arbitration . . . where there is a requisite nexus of the claim to the contract together with [an] integral relationship between the non-signatory and the other contracting party." *Precision Funding Grp. v. Nat'l Fid. Mortg.*, No. 12-cv-5054 (RMB/JS), 2013 U.S. Dist. LEXIS 76609, at *13–14 (D.N.J. May 31, 2013); *Torlay*, 2019 U.S. Dist. LEXIS 159478, at *12–13 (same).

Both situations are present. The Plaintiffs' claims against all defendants—including Riverside Medical Management—are premised on the providers' contracts. There is also a strong nexus between the Plaintiffs' claims and their contracts, and all defendants are part of the same company. *See also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261 (5th Cir. 2014) (compelling arbitration of claims against Caremark's non-signatory affiliates because the claims were based on a provider contract containing an arbitration agreement).

For similar reasons, the Court should also order the Plaintiffs to arbitrate their claims because UnitedHealthcare Insurance Company executed the providers' contracts "on behalf of itself, AmeriChoice of New Jersey, Inc., and *its other affiliates.*" Dkt. 15-3 at 2 (emphasis added). Riverside Medical Management and the other defendants are United affiliates (Dkt. 15-2, Nielsen Decl. ¶¶ 7–9), so the arbitration agreement applies to the Plaintiffs' claims against those entities. *See Doyle v. Ad Astra Recovery Servs.*, 2018 U.S. Dist. LEXIS 35884, at *9 n.7 (D.N.J. Mar. 6, 2018) ("[A] parent company, subsidiary or affiliate of [a signatory], can move to enforce [an] arbitration provision even though it is not a signatory to the agreement" so long as supported by the contract); *George v. Rushmore Serv. Ctr., LLC*, No. 18-cv-13698, 2020 U.S. Dist. LEXIS 82736, at *3-4 (D.N.J. May 11, 2020) (similar).

\* \* \*

Each Plaintiff must arbitrate their claims on an individual basis. The arbitration agreement provides that "[w]e both expressly intend that any dispute between us be resolved on an individual basis so that no other dispute with any third party(ies) may be consolidated or joined with our dispute." Ex. A, Nielsen Decl. Ex. 1 at 6. The parties also agreed that an arbitrator's "allowing class action arbitration or requiring consolidated arbitration involving third party(ies) would be contrary to our intent." *Id.* Courts and arbitrators must honor those sorts of contractual agreements. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019).

**3.   The arbitration agreements are enforceable and the Plaintiffs' claims are arbitrable.**

Last year, the Plaintiffs and their providers argued that the arbitration agreement was unenforceable. Dkt. 1-1, *Salerno*, No. 2:19-cv-18130. The Court referred that issue to arbitration, and an emergency arbitrator ruled for United on the question. Since then, the Plaintiffs' providers have not challenged the arbitration agreement's enforceability.

But if the Plaintiffs renew the argument, then the Court should do what it did last October—refer the question to arbitration. Under the Federal Arbitration Act, questions of arbitrability are for the arbitrator in the first instance if the parties "clearly and unmistakably" delegate those questions to the arbitrator. *loanDepot.com v. CrossCountry Mortg., Inc.*, No. 18-12091 (KM) (JBC), 2019 U.S. Dist. LEXIS 106518, at *12–13 (D.N.J. June 24, 2019). That is what the parties did by agreeing to submit "all disputes" to "binding arbitration in accordance with the Commercial Dispute Procedures of the American Arbitration Association (see http://www.adr.org)." Ex. A, Nielsen Decl. Ex. 1 at 5. "[B]y agreeing to arbitrate in accordance with AAA rules, the parties to [an arbitration agreement] clearly and unmistakably agreed to arbitrate the issue of arbitrability." *loanDepot.com*, 2019 U.S. Dist. LEXIS 106518, at *12–13; *see also Neal*, 2016 U.S. Dist. LEXIS 85163, at *14.

If this Court could decide questions about arbitrability, it would conclude that the claims are subject to arbitration and that the agreement is enforceable. The agreement requires the parties to submit "all disputes between [them]" to individual arbitration. Ex. A, Nielsen Decl. Ex. 1 at 5. All means all. *See, e.g.*, *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000). As important, the parties spent more than 300 words explaining when the arbitration agreement applies, what arbitration rules would govern the proceeding, where those rules may be found, the binding effect of the arbitration, whether multi-party or classwide arbitrations are allowed, whether the arbitrator may vary from the contract, what law applies to the arbitration agreement, whether the arbitrator may award punitive or exemplary damages without statutory authorization, where the arbitration will be held, and affirming that the arbitration agreement is comprehensive. *See also* Dkt. 21 at 29, *Salerno*, No. 2:19-cv-18130 (transcript) (the Court: "I find [the arbitration agreement] clear enough and more. I mean, it

refers to the AAA. It cites you to the AAA website. It is very much clear enough of an invocation of the rules of the AAA . . . .").

That agreement goes above and beyond what the law requires. "Under the FAA, agreements to arbitrate are valid, irrevocable, and enforceable, subject only to traditional contract principles." *Horowitz v. AT&T Inc.*, No. 3:17-cv-4827, 2019 U.S. Dist. LEXIS 60, at *12 (D.N.J. Jan. 2, 2019). In New Jersey, an arbitration agreement "is enforceable if it is supported by consideration and it was knowingly and voluntarily entered into." *Id.* at *15; *see also Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 236 N.J. 301, 318–19 (2019) (New Jersey has a "hospitable approach toward arbitration" that is "in synchronicity" with the FAA). The arbitration agreement satisfies that standard.

## III. ALTERNATIVELY, THE COURT SHOULD DISMISS THE CLAIMS AGAINST ALL DEFENDANTS BECAUSE THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM.

If the Court did not compel arbitration, then it should dismiss all claims against all defendants because the claims fail the applicable pleading standards.

### A. The civil-conspiracy claim (Count I) is frivolous.

The Plaintiffs' conspiracy claim is hard to follow, but so far as we can tell, the Plaintiffs allege that the "Defendants"—undifferentiated—conspired with each other to non-renew the providers' contracts and to "steer" the providers' patients to providers affiliated with Riverside Medical Management. Dkt. 10-1, Compl. ¶¶ 120–21. The Plaintiffs speculate that United did so by allegedly issuing notices to United's plan members recommending a Riverside provider. *Id.* ¶ 55. That claim fails for at least three reasons.

1. The Plaintiffs pleaded no facts supporting their speculation that Riverside Medical Management or any other defendant conspired with anyone to do anything. When you remove the conclusory allegations, the Plaintiffs' only factual allegation about Riverside's alleged conduct is that "[i]n or about June 2018, RMG first sought to acquire [plaintiff] SMA and did so again later, but Dr. Salerno refused all overtures." Dkt. 10-1, Compl. ¶ 87. From that single allegation—about only one

Plaintiff—the Plaintiffs then speculate "upon information and belief" that "United, RMG and John Does conspired to force all fourteen (14) of SMA's Providers out of the Plan." *Id.* ¶ 88.

There are no factual allegations connecting Riverside to UnitedHealthcare Insurance Company's non-renewal decisions. There are no factual allegations suggesting that anyone at Riverside harbored malice toward Dr. Salerno for declining the alleged acquisition offer in 2018, that anyone from Riverside spoke with UnitedHealthcare about Salerno or his practice, that Riverside knew about UnitedHealthcare's non-renewal decisions, that it had any say in those decisions, that UnitedHealthcare relied on factors outside of its normal business analysis when deciding to non-renew those providers, or that UnitedHealthcare recommended a Riverside provider—in notices or otherwise—to even one of Salerno's patients (it didn't).

A plaintiff cannot survive a Rule 12(b)(6) motion with "a bare assertion of conspiracy." *Twombly*, 550 U.S. at 556; *see also id.* at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). "[C]onclusory allegations of concerted action, without allegations of fact that reflect joint action, are insufficient to meet [Rule 8's] requirement." *Adams v. Teamsters Local 115*, 214 F. App'x 167, 175 (3d Cir. 2007). The Plaintiffs pleaded only conclusory allegations about Riverside—and did so only "upon information and belief." Dkt. 10-1, Compl. ¶¶ 4, 67, 88, 90, 94. They certainly didn't plead facts showing the who, what, when, where, or how of the non-existent agreement.

The Plaintiffs also allege that United non-renewed "Dr. Inas Wassef" and that it supposedly listed a "Riverside" provider in notices to some of Wassef's plan-member patients. Dkt. 10-1, Compl. ¶ 91. That allegation is irrelevant because Wassef is not affiliated with any Plaintiff.[5] *See id.* ¶ 54 (alleging that Wassef is "owner of a pediatric clinic in Jersey City and Bayonne"). And at the 12(b)(6) stage, the Court tests the Plaintiffs' legal claims, not claims that putative class members could theoretically allege. "[A] nonnamed class member is not a party to the class-action litigation before the class is certified." *Smith v. Bayer*, 564 U.S. 299, 313 (2011).

---

[5] The Plaintiffs also allege that United somehow "retaliated" against Wassef by declining to reinstate her into the plan, but that allegation is irrelevant for the same reason. Dkt. 10-1, Compl. ¶¶ 92, 109.

In any case, the Plaintiffs' allegation that UnitedHealthcare sent notices to Wassef's plan members doesn't suggest *any* conduct by Riverside. Nor does it plausibly suggest that Riverside agreed with anyone to non-renew the Plaintiffs' providers. Or that Riverside participates in UnitedHealthcare's non-renewal decisions. Or that Riverside even knows about those decisions.

Beyond that, the Plaintiffs allege no facts suggesting that UnitedHealthcare listed a Riverside provider in letters to any other provider's patients. And even beyond that, the Plaintiffs' allegations against Dr. Wassef backfire because the Plaintiffs allege that Riverside has an office one mile away from Dr. Wassef's office (Dkt. 10-1, Compl. ¶ 91), which confirms that United recommends new providers to plan members based on geography, not a scheme to "steer" patients to certain providers.

2.   The conspiracy claim also fails because United cannot conspire with itself. *Cf.* Dkt. 10-1, Compl. ¶ 85 (alleging that United indirectly owns Riverside). UnitedHealth Group wholly owns all defendants, including Riverside Medical Management, LLC. *See id.* (alleging that UnitedHealth Group owns UnitedHealthcare Insurance Company, UnitedHealthcare Community Plan, and Optum Care); *id.* ¶ 24 (alleging that Optum, Inc. owns Optum Care); *see also* Ex. A, Nielsen Decl. ¶ 9 (UnitedHealth Group also owns Riverside Medical Management, LLC).

Since the 1980s, the Supreme Court and lower courts have held that a parent company and its subsidiaries are legally "incapable of conspiring with each other." *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984); *Am. Capital Acquisition Partners, LLC v. Fortigent, LLC*, No. 13-5571, 2014 U.S. Dist. LEXIS 38003, at *19–20 (D.N.J. Mar. 21, 2014) (same); *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, No. 06-cv-3044, 2008 U.S. Dist. LEXIS 103526, at *58 (D.N.J. Dec. 23, 2008) (same). Courts have also applied that rule to subsidiaries that an ultimate parent owns indirectly—including in the context of UnitedHealth Group's corporate structure. *See Cedra Pharmacy Houston LLC v. UnitedHealth Group,* No. H-17-3800, 2019 U.S. Dist. LEXIS 55827, at *30–31 (S.D. Tex. Mar. 7, 2019), *report and recommendation adopted by* No. 4:17-CV-03800, 2019 U.S. Dist. LEXIS 55285 (S.D. Tex. Mar. 29, 2019).

The same reasoning applies here: UnitedHealth Group owns every defendant, so those entities cannot conspire together. And just as a parent and a wholly owned subsidiary cannot conspire

together, affiliates that are wholly owned by the same ultimate parent cannot conspire together. *See, e.g., Advanced Health-Care Servs. v. Radford Cmty. Hosp.*, 910 F.2d 139, 146 (4th Cir. 1990) ("[T]wo subsidiaries wholly owned by the same parent corporation are legally incapable of conspiring with one another for purposes of § 1 of the Sherman Act"); *Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23 (1st Cir. 1988) (same); *see also MCI Telecomms. Corp. v. Graphnet, Inc.*, 881 F. Supp. 126, 130 (D.N.J. 1995) ("The [*Copperweld*] limitation has also been recognized as extending to alleged conspiracies between wholly-owned subsidiaries of a parent corporation.").

3.   In all events, the Plaintiffs' conspiracy claim also fails because the Plaintiffs' other tort claims fail as a matter of law. There can be no conspiracy without a predicate tort. *See Frey v. City of Hoboken*, No. A-2918-15T4, 2018 N.J. Super. Unpub. LEXIS 1734, at *7–8 (Super. Ct. App. Div. July 19, 2018).

## B.   The tortious-refusal-to-deal claim (Count II) is frivolous.

Nor do the Plaintiffs have a claim for "tortious refusal to deal." They allege in Count II that "the Defendants . . . wrongfully discharged various Medical Group Providers and tortiously refused to deal with the Medical Groups" (Dkt. 10-1, Compl. ¶ 126), but United didn't "wrongfully discharge" the Plaintiffs' providers. It exercised a contractual right to non-renew. It also didn't "tortiously refuse to deal with the Medical Groups." In any event, a firm may generally do business with whomever it pleases. *See Rothermel*, 163 N.J. Super. at 244 ("Basic to our free enterprise system is the right to enter or to refrain from entering or continuing a contractual relationship."); Restat. 2d of Torts, § 766, cmt. b ("Deliberately and at his pleasure, one may ordinarily refuse to deal with another, and the conduct is not regarded as improper, subjecting the actor to liability."). There is no New Jersey case suggesting that a counterparty may incur tort liability for terminating a contract in accordance with its terms. And Congress does not require managed-care organizations to contract with healthcare providers forever. *Cf.* 42 C.F.R. § 422.202(d)(4) (managed-care organizations may terminate providers "without cause" so long as they give 60 days' notice).

### C.  The Plaintiffs' unfair-competition claim (Count III) fails.

The Plaintiffs also allege that United committed "unfair competition" in the following ways:

> notifying patients months in advance that their Providers were being terminated from the Plan, conspiring to terminate, and thereafter terminating, the Medical Groups' Providers from the Plan knowing that United was doing so in violation of the Regulations, interfering with the Medical Groups' efforts to transfer patients to other Providers in their Medical Groups, failing to re-list terminated Providers (in real-time) to directories after being ordered to do so in the Lawsuit and various individual arbitrations, utilizing the Medical Groups' trade secrets and/or confidential and proprietary information relating to their patients, and directing those patients to RMG.

Dkt. 10-1, Compl. ¶ 130.

None of those conclusory allegations supports a claim for unfair competition. Many courts have held that New Jersey does not recognize a cause of action for unfair competition. *See, e.g.*, *C.R. Bard, Inc. v. Wordtronics Corp.*, 235 N.J. Super. 168, 172, 561 A.2d 694, 696 (Law Div. 1989) ("There is no distinct cause of action for unfair competition."); *see also Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. 13-6194 (JBS/JS), 2014 U.S. Dist. LEXIS 61131, at *20 (D.N.J. May 1, 2014) (same). Other courts have recognized a limited unfair-competition claim, but they have cabined the claim to the intellectual property (misappropriation) context. *See, e.g.*, *Nat'l Auto Div., LLC v. Collector's All., Inc.*, No. A-3178-14T3, 2017 N.J. Super. Unpub. LEXIS 234, at *11 (Super. Ct. App. Div. Jan. 31, 2017) ("Outside of the intellectual property context, unfair competition is not an independent cause of action."); *see also Tris Pharma, Inc. v. UCB Mfg.*, No. A-5808-13T3, 2016 N.J. Super. Unpub. LEXIS 1982, at *12 (Super. Ct. App. Div. Aug. 29, 2016) (affirming holding that "the common law tort of unfair competition is limited to misappropriation or 'palming off' of goods or services"). Even if an unfair-competition claim exists in New Jersey, most of the allegedly "unfair competition" that the Plaintiffs identify has nothing to do with misappropriation. *See* Dkt. 10-1, Compl. ¶ 130. The Plaintiffs have no cause of action for unfair competition based on those allegations.

In any case, those allegations would not support a claim. United cannot have committed unfair competition by non-renewing the contracts because it exercised a contractual right to non-renew. Nor does the non-existent "conspiracy" support an unfair-competition claim; there are no factual allegations supporting the Plaintiffs' theory that United "steered" plan members to Riverside or that

Riverside somehow pressured United to non-renew providers for that purpose. *Cf.* Dkt. 10-1, Compl. ¶ 130. The Plaintiffs also fault United for not immediately re-listing non-renewed providers on United's website after this Court's October 11 order or after a couple of providers obtained preliminary injunctive relief in arbitrations (*id.*), but nothing in law or contract required a "real time" re-listing—which is not possible in United's system in any event.[6] And again, none of those allegations is the type of "intellectual property" claim that falls within New Jersey's narrow unfair-competition regime.

Nor can the Plaintiffs manufacture a claim with their frivolous allegation that United misappropriated plan members' names and addresses by sending letters notifying those plan members that their providers were leaving United's network. *See* Dkt. 10-1, Compl. ¶ 130. To prove a misappropriation claim, a plaintiff must show that "(1) a trade secret exists; (2) the information comprising the trade secret was communicated in confidence by plaintiff to the employee; (3) the secret information was disclosed by that employee and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence; (5) the secret information was used by the competitor to the detriment of plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret." *Rao v. Anderson Ludgate Consulting, LLC*, No. 15-3126 (SRC), 2016 U.S. Dist. LEXIS 87771, at *7 n.2 (D.N.J. July 7, 2016); *Telmark Packaging Corp. v. Nutro Labs. & Nature's Bounty*, No. 05-3049, 2008 U.S. Dist. LEXIS 45, at *14 (D.N.J. Jan. 2, 2008) (same).

None of those elements is present. Neither the Plaintiffs nor their providers have proprietary rights—much less a trade secret—in United's plan members' names and addresses. Nor are there any factual allegations suggesting (i) that the Plaintiffs communicated their alleged trade secrets to United, (ii) that they did so "in confidence," (iii) that United is an employee of the Plaintiffs, (iv) that United breached any duty of confidence to the Plaintiffs by sending letters to its own plan members, or (v)

---

[6] United also cannot have committed unfair competition by inquiring into one of the Plaintiffs' providers' billing practices or by declining to allow the Plaintiffs to transfer patients from one non-renewed provider to another soon-to-be-non-renewed provider. *Cf.* Dkt. 10-1, Compl. ¶¶ 96, 107–08.

that United disclosed the Plaintiffs' alleged trade secrets to a competitor while knowing that it was breaching a duty of confidence. *Cf. Telmark Packaging*, 2008 U.S. Dist. LEXIS 45, at *15 (no misappropriation claim because "the disclosure of the secret in question must be to an 'employee'"). On top of that, United was in rightful possession of its own plan members' names and addresses, so it cannot have misappropriated that information by sending letters to its plan members. There are also no factual allegations suggesting that Riverside misappropriated patient information that it received in confidence from the Plaintiffs.

United also cannot have misappropriated its plan members' names and addresses because federal regulations required United to send the letters that it sent. Section 422.111(e) provides that an "MA organization must make a good faith effort to provide written notice of a termination of a contracted provider at least 30 calendar days before the termination effective date to all enrollees who are patients seen on a regular basis by the provider" (42 C.F.R. § 422.111(e)), and the Centers for Medicare and Medicaid Services (CMS) instructs that the notice should include "[n]ames and phone numbers of in-network providers that enrollees may access for continued care." Medicare Managed Care Manual, Ch. 4 at § 110.1.2.3. United followed those regulations in sending letters to its plan members.

The Plaintiffs also think that United did something wrong by sending those letters more than 30 days before the providers' non-renewals. Dkt. 10-1, Compl. ¶ 95. CMS has said otherwise: The agency instructs managed-care organizations to send letters to plan members "preferably more than 30 days in advance" of a non-renewal when possible. *See* Medicare Managed Care Manual, Ch. 4 at § 110.1.2.3 ("CMS expects that when an MAO has 60 days advance notice that a contract with a provider will be terminated . . . , the MAO should notify affected enrollees at least 30 days in advance of the contract termination but preferably more than 30 days in advance."); *id.* ("best practice" is to "provide affected enrollees more than the required 30 days advance notice."). In any case, United's

allegedly giving its plan members too much notice is not an intellectual-property claim. *Cf. Nat'l Auto Div.*, 2017 N.J. Super. Unpub. LEXIS 234, at *11.[7]

### D. There are no factual allegations supporting any element of the Plaintiffs' unjust-enrichment claim (Count IV).

The Plaintiffs also allege an unjust-enrichment claim, but they didn't plead facts supporting that claim. There are no factual allegations that any defendant received "a benefit" from the Plaintiffs. *Thieme*, 227 N.J. at 288. There are no factual allegations suggesting that any defendant retained a benefit or that the non-existent retention "would be unjust." *Id.* There are no factual allegations that any plaintiff "expected renumeration" from any defendant when the plaintiff conferred the non-existent benefit. *Id.* And there are no factual allegations that the benefit "enriched [a] defendant beyond its contractual rights." *Id.*

### E. The Plaintiffs' tortious-interference claim (Count V) fails.

The Plaintiffs also allege that the "aforesaid conduct of Defendants constitutes, inter alia, a tortious interference with Medical Groups' contractual and business relations with their Providers and patients as well as other Medical Groups and their Providers." Dkt. 10-1, Compl. ¶ 137. It is unclear what alleged conduct the Plaintiffs are referring to, but we will assume that the Plaintiffs allege that UnitedHealthcare Insurance Company tortiously interfered with patient relationships or the Plaintiff-provider contracts by non-renewing providers' contracts.

That claim fails for at least five reasons. *Cf. Read v. Profeta*, No. 15-cv-2637 (KM), 2017 U.S. Dist. LEXIS 4451, at *15-16 (D.N.J. Jan. 11, 2017) (elements of claim).

*First*, UnitedHealthcare is not a stranger to the providers' relationships with its own plan members. In New Jersey, a plaintiff must plead and prove that the defendant was outside of the business relationship with which it supposedly interfered. *See D'Agostino v. Appliances Buy Phone, Inc.*, No. A-2005-13T1, 2016 N.J. Super. Unpub. LEXIS 504, at *24 (Super. Ct. App. Div. Mar. 8, 2016) (defendant must not be "part[y] to the relationship"). The Plaintiffs did not and cannot do that;

---

[7] The Plaintiffs also speculate that United's provider network might not meet network-adequacy standards. Dkt. 10-1, Compl. ¶¶ 71, 74. That false speculation is irrelevant to the Plaintiffs' claims. And in any event, CMS, not the Plaintiffs, regulates network adequacy. 42 C.F.R. § 422.112(a)(1).

UnitedHealthcare is not a stranger to the relationship between its own plan members and a contracting physician.

Courts in New Jersey have said so. In *Center for Special Procedures v. Connecticut General Life Insurance Co.*, a physician group sued a health plan for interfering with prospective patient relationships, alleging that the plan declined to pay for certain services that the physicians provided to the plan's members. No. 09-6566, 2010 U.S. Dist. LEXIS 128289, at *20 (D.N.J. Dec. 6, 2010). The court dismissed the claim. It explained that "[b]ecause Defendants [health plans] are party to the contractual relationship giving rise to the claims here—namely, the insurance plans—Defendants are not subject to a claim for tortious interference with prospective economic advantage." *Id.*; *see also Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*, No. A-2307-17T1, 2019 N.J. Super. Unpub. LEXIS 1633, at *23–24 (Super. Ct. App. Div. July 16, 2019) (no tortious-interference claim when physician group "was the link between the patients and [a hospital]" that served the patients).  The same reasoning applies here.

*Second*, there are no factual allegations suggesting that United interfered with any contracts between the Plaintiffs and their providers or that it did so *intentionally*, as required. *Cf. Read*, 2017 U.S. Dist. LEXIS 4451, at *15–16. The Plaintiffs' allegation that UnitedHealthcare non-renewed its contracts with the providers doesn't plausibly suggest that it intentionally interfered with any contracts between the Plaintiff medical groups and their providers. Nor are there any factual allegations suggesting that United intentionally interfered with any contracts or business relations between the Plaintiffs and "other Medical Groups and their Providers." Dkt. 10-1, Compl. ¶ 137.

*Third*, there are no allegations suggesting that UnitedHealthcare acted out of "malice" when it supposedly interfered with the Plaintiffs' contracts with their providers or their providers' patients. *See Nostrame v. Santiago*, 213 N.J. 109, 122 (2013) (plaintiff must prove malice); *Read*, 2017 U.S. Dist. LEXIS 4451, at *16 (defendant must act "wrongfully"). A defendant acts with malice only if it inflicts harm "intentionally and without justification or excuse." *Interstate Realty Co., L.L.C. v. Sears, Roebuck & Co.*, No. 06-5997, 2009 U.S. Dist. LEXIS 35141, at *25 (D.N.J. Apr. 27, 2009). Even "[c]onduct spurred by spite and ill-will is not necessarily sufficient to rise to the level of 'malice.'" *Id.* at *26.

United had a contractual right to non-renew; it cannot be liable for tortious interference by doing what the contracts contemplated. "Committing an act specifically anticipated by the contract does not support a claim for tortious interference with a contract." *Sammarco v. Anthem Ins. Cos.*, 723 N.E.2d 128, 136-37 (Ohio Ct. App. 1998) (rejecting terminated provider's claim that Anthem tortiously interfered with patient relationships), *rev'd in part on other grounds*; *id.* at 137 ("Anthem's 'interference,' if any, with the physician-patient relationship alleged here was privileged as a matter of law because the contracts between the parties were admittedly at-will."); *see also Samsung Elecs. Am., Inc. v. Westpark Elecs., LLC*, 2016 N.J. Super. Unpub. LEXIS 2170, at *19–20 (Law Div. Sept. 29, 2016) (similar reasoning). Nor can the Plaintiffs prove "malice" by speculating about a conspiracy between UnitedHealthcare and "Riverside." They have alleged no facts supporting the notion that any defendant acted with malice.

*Fourth*, there are no factual allegations suggesting that any allegedly wrongful and intentional interference by United caused "loss of the contract" between the Plaintiffs and their providers, as required for the claim. *Read*, 2017 U.S. Dist. LEXIS 4451, at *16 & n.8; *see also* Dkt. 10-1, Compl. ¶ 137. The Plaintiffs allege only that they might have received more revenue if UnitedHealthcare had not non-renewed their providers' contracts. *E.g.*, Dkt. 10-1, Compl. ¶ 3. That is not loss of any contract between the Plaintiffs and their providers.

*Fifth*, the Plaintiffs' claim also fails because it hinges on the providers' economic relationship with United. In *Medical Society of New Jersey v. AmeriHealth HMO, Inc.*, the Medical Society alleged that AmeriHealth had delayed or reduced payment to providers and tortiously interfered with provider-patient relationships. 376 N.J. Super. 48, 53 (Super. Ct. App. Div. 2005). The trial court dismissed the Society's claims, and the court of appeals affirmed. *Id.* at 51. As the court explained, the Society's tortious-interference claim—which concerned AmeriHealth's alleged interference with providers-patient relationships—failed because the claim's "essential factual basis" was the economic relationship between the providers and AmeriHealth, not the provider-patient relationship. *Id.*

The same is true here. The "essential factual basis" for the Plaintiffs' tortious-interference claim is their providers' economic relationship with United, not the Plaintiffs' relationship with the providers' patients.

The Plaintiffs' tortious-interference claim seems geared toward UnitedHealthcare Insurance Company, but the claim would fail even if the Plaintiffs allege that Riverside Medical Management tortiously interfered with UnitedHealthcare's contract with the Plaintiffs' providers or with the Plaintiff-provider contracts. The Plaintiffs speculate on "information and belief" that Riverside might have pressured UnitedHealthcare to non-renew the providers' contract (Dkt. 10-1, Compl. ¶ 90), but there are no factual allegations—*none*—supporting that speculation. Even if there were, the claim would fail because the Plaintiffs must prove that a third party interfered with two other parties' contract. *See E. Penn Sanitation v. Grinnell Haulers, Inc.*, 294 N.J. Super. 158, 169 (Super Ct. App. Div. 1996). Riverside Medical Management and UnitedHealthcare are part of the same corporate family, so they cannot tortiously interfere with each other's contracts. *Copperweld*, 467 U.S. at 771. "[T]here can be no non-contractual liability [for tortious interference] to [an] affiliated corporation, which is privileged to consult and counsel with its affiliates." *Gavornik v. LPL Fin. LLC*, No. 14-955, 2014 U.S. Dist. LEXIS 107146, at *17–19 (D.N.J. Aug. 5, 2014).

There is a narrow exception to that rule, but the exception applies only if a plaintiff pleads facts showing that a corporate affiliate acted out of personal animus toward a plaintiff (as opposed to advancing the affiliate's financial interests). *See Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 591 (Del. Ch. 1994) ("[T]he plaintiff [must plead] and [prove] the affiliate sought not [just] to achieve permissible financial goals"). The Plaintiffs have not pleaded facts of that sort. The Plaintiffs allege on "information and belief" that Riverside wanted UnitedHealthcare to non-renew the providers "such that patients could be steered and redirected to [Riverside] for their medical treatment rather than from the Medical Groups." Dkt. 10-1, Compl. ¶ 90. By the Plaintiffs' own theory, then, Riverside acted out of its own financial interests, which means that it cannot have tortiously interfered with its affiliate's contract. *See, e.g.*, *Shearin*, 652 A.2d at 591.

### F.  The Plaintiffs' misappropriation claim (Count VI) is frivolous.

The Plaintiffs also allege that the "Defendant(s)" misappropriated their trade secrets or other confidential information by using and disclosing "patient names and contact information." Dkt. 10-1, Compl. ¶ 141. That claim fails for reasons that we have already explained. Neither the Plaintiffs nor their providers have proprietary rights—much less a trade secret—in United's plan members' names and addresses. The information that United supposedly misappropriated was in its rightful possession. United did not wrongfully use or disclose plan members' names and addresses by doing what a federal regulation requires. *See* 42 C.F.R. § 422.111(e). And none of the other elements of the claim—including an employer-employee relationship or a breach of confidence—is supported by factual allegations.

### G.  The Plaintiffs have no right to enforce the cited federal regulation.

Unlike in the 2019 case, the Plaintiffs do not allege a cause of action under the cited Medicare Advantage regulation (42 C.F.R. § 422.202(d)), but they continue to allege that United violated that regulation by supposedly not giving the Plaintiffs' providers a good enough reason for their non-renewals and by not giving providers "the standards and profiling data used to evaluate [them]." Dkt. 10-1, Compl. ¶ 45. Even if the Plaintiffs had alleged a claim under the regulation—instead of sprinkling the allegation throughout their Complaint—the claim would fail.

The Plaintiffs' allegations about § 422.202(d) fail at the threshold because no federal statute gives a healthcare provider—much less a medical group—a cause of action to enforce that regulation. There is no private right of action unless Congress "displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval,* 532 U.S. 275, 286–87 (2001). Nor may a regulation create a cause of action that a statute does not: "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Sandoval*, 532 U.S. at 291; *Gross v. Cormack*, 586 F. App'x 899, 901 (3d Cir. 2014) (same).

There is no federal statute giving providers or their medical groups the right to enforce a Medicare Advantage organization's compliance with § 422.202(d). The statute governing a provider's removal from a Medicare Advantage network (42 U.S.C. § 1395w-22(j)) certainly doesn't evince any congressional intent to that effect.

Other context clues confirm that there is no cause of action for medical groups to enforce § 422.202(d). In determining whether Congress created a private right of action, courts often consider whether Congress expressly created a private right of action for other statutes in the same chapter. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007). That is what Congress did here: In 42 U.S.C. § 1395y(b)(3)(A)—another part of the Medicare Act—Congress "established a private cause of action for damages . . . in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)." Congress's decision to create an express cause of action in that section confirms that Congress did not create one sub silentio in § 1395w-22(j). *See Bellikoff*, 481 F.3d at 116.

The federal statute giving CMS authority to regulate a healthcare organization's compliance with Medicare Advantage regulations supports the same conclusion. "[T]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Bellikoff*, 481 F.3d at 116. In 42 U.S.C. § 1395w-27, Congress gave CMS the authority to audit a healthcare organization's compliance with Medicare Advantage regulations, inspect the organization's records, and issue sanctions or other corrective measures. 42 U.S.C. § 1395w-27(d), (g). It is up to CMS—not private litigants like the Plaintiffs—to police United's compliance with the regulations.[8]

The Plaintiffs attached to their Complaint one arbitrator's order reaching a different conclusion (Dkt. 10-1, Ex. C), but it was improper for them to do so. In any event, that arbitrator manifestly disregarded the law. What the Plaintiffs did not tell the Court is that three other arbitrators have disagreed with that arbitrator and have granted judgment to United on the providers' regulatory claims. United will introduce those orders into evidence in any individual arbitrations that the Plaintiffs file.

---

[8] CMS's Managed Care Manual proves the point. That manual contains detailed regulatory guidance concerning healthcare organizations' compliance with the regulations. CMS also recognizes that United could do what it did here—non-renew the providers' contracts without cause. "CMS recognizes that significant *no-cause* network changes may occur during the contract year." Managed Care Manual, Ch. 4 at § 110.1.2.1 (emphasis added). Congress has not created a cause of action for providers to enforce § 422.202(d). The Plaintiffs have no right to premise their tort claims—including their tortious-interference claim—on United's supposed non-compliance with § 422.202(d). *Compare* Dkt. 10-1, Compl. ¶ 50 (tortious-interference allegation).

Even if the Plaintiffs had a private right of action to enforce § 422.202(d), any (nonexistent) technical regulatory violation would not entitle the Plaintiffs to tort damages; the regulation does not contemplate damages actions. Nor does the regulation override United's right under the contracts and the regulation to non-renew on 90 days' notice.[9]

## **CONCLUSION**

The Court should dismiss the claims against UnitedHealth Group, Inc., UnitedHealthcare Community Plan, Inc., Optum, Inc., and Optum Care, Inc. for lack of personal jurisdiction. Having done that, the Court should compel the Plaintiffs to arbitrate their claims against UnitedHealthcare Insurance Company and Riverside Medical Management (and any other remaining defendants). Alternatively, the Court should dismiss the claims against all defendants because they fail the applicable pleading standards and are frivolous.

The Court should also award attorneys' fees and costs to United for having to file this motion. The Plaintiffs recycled the same claims that they filed last year and that the Court referred to arbitration. They had no basis for ignoring this Court's 2019 order.

Respectfully submitted on September 22, 2020.

/s/ Steven Penaro
Steven L. Penaro                                Brian D. Boone
D.N.J. ID # 030182009                           *Pro hac vice motion forthcoming*
**ALSTON & BIRD LLP**                            **ALSTON & BIRD LLP**
90 Park Ave                                      Bank of America Plaza, Suite 4000
New York, NY 10016                               101 S. Tryon St.
Tel: 212-210-9460                                Charlotte, NC 28280
Fax: 212-922-3960                                Tel: 704.444.1000
steve.penaro@alston.com                          Fax: 704.444.1111
                                                 brian.boone@alston.com


Lee A. Deneen
Fiona O'Carroll
Anderson S. B. Kemp

---

[9] If the Plaintiffs filed individual arbitrations, then United would introduce evidence about each provider confirming that it complied with § 422.202(d) by non-renewing the providers' contracts without cause.

*Pro hac vice motions forthcoming*
**ALSTON & BIRD LLP**
1201 W. Peachtree St., Suite 4900
Atlanta, GA 30309
Tel: 404.881.7000
Fax: 404.881.7777
lee.deneen@alston.com

*Counsel for UnitedHealth Group, Inc.,*
*UnitedHealthcare Insurance Company, UnitedHealthcare Community Plan, Inc.,*
*Optum, Inc., Optum Care, Inc., and Riverside Medical Management, LLC*

**CERTIFICATE OF SERVICE**

I certify that on September 22, 2020, I electronically filed this combined motion and supporting documents with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of the filing to the following attorneys of record.

Steven I. Adler
Lauren X. Topelsohn
Mandelbaum Salsburg P.C.
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
sadler@lawfirm.ms

s/Steven Penaro
Steven L. Penaro
D.N.J. ID # 030182009
**ALSTON & BIRD LLP**
90 Park Ave
New York, NY 10016
Tel: 212-210-9460
Fax: 212-922-3960
steve.penaro@alston.com

*Counsel for the Defendants*