**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALERNO MEDICAL ASSOCIATES, LLP, SENIOR HEALTHCARE OUTREACH PROGRAM, INC., and SM MEDICAL LLC, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>RIVERSIDE MEDICAL MANAGEMENT, LLC, UNITEDHEALTHCARE COMMUNITY PLAN, INC., OPTUM, INC., OPTUM CARE, INC., UNITEDHEALTH GROUP, INC., UNITEDHEALTHCARE INSURANCE COMPANY and JOHNS DOE 1-20,<br><br>    Defendants. | Case No. 2:20-cv-10539 (KM)<br><br>**MOTION DAY: November 2, 2020** |

**UNITED'S REPLY BRIEF SUPPORTING COMBINED**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,**
**MOTION TO COMPEL ARBITRATION, AND ALTERNATIVELY,**
<u>**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**</u>

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.    THE COURT LACKS PERSONAL JURISDICTION OVER FOUR OF THE DEFENDANTS. ......................................................................................................2

II.    THE COURT SHOULD COMPEL THE PLAINTIFFS TO ARBITRATE THEIR CLAIMS AGAINST THE OTHER TWO DEFENDANTS. ....................................5

    A.    The Court already compelled the Plaintiffs to arbitrate the same claims. ......................5

    B.    The Court should equitably estop the Plaintiffs from denying arbitration while trying to recover benefits under the provider contracts. .........................................5

    C.    UnitedHealthcare's affiliate may compel arbitration. .......................................................8

    D.    The Court should decide the equitable-estoppel issue now. ...........................................8

III.    THE COURT SHOULD ALTERNATIVELY DISMISS THE CLAIMS AGAINST ALL DEFENDANTS FOR FAILURE TO STATE A CLAIM. ............................9

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adams v. Teamsters Local 115*,
   214 F. App'x 167 (3d Cir. 2007) .................................................................................................9

*Baker v. Wittevrongel*,
   363 F. App'x 146 (3d Cir. 2010) ...............................................................................................11

*Bayonne Drydock & Repair Corp. v. Wartsila N. Am., Inc.*,
   No. 12-819, 2013 U.S. Dist. LEXIS 91089 (D.N.J. June 28, 2013).......................................... 7

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477, 97 S. Ct. 690 (1977) ...........................................................................................10

*Burlington N. R.R. v. Hyundai Merch. Marine Co.*,
   63 F.3d 1227 (3d Cir. 1995) ........................................................................................................5

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..................................................................................................................1, 3

*Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co.*,
   69 F.3d 868 (8th Cir. 1995) .......................................................................................................10

*Doyle v. Ad Astra Recovery Servs.*,
   2018 U.S. Dist. LEXIS 35884 (D.N.J. Mar. 6, 2018)..................................................................8

*Dutch Run-Mays Draft, LLC v. Wolf Block, LLP*,
   450 N.J. Super. 590, 164 A.3d 435 (Super. Ct. App. Div. 2017) ................................................3

*Hirsch v. Amper Fin. Servs., LLC*,
   215 N.J. 174 (N.J. 2013) .............................................................................................................8

*Horowitz v. AT&T Inc.*,
   No. 3:17-cv-4827-BRM-LHG, 2018 U.S. Dist. LEXIS 69191 (D.N.J. Apr. 25, 2018) ..............3

*IMO Indus. V. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998).........................................................................................................4

*McLean v. HSBC Fin. Corp.*,
   No. 15-8974, 2016 U.S. Dist. LEXIS 136817 (D.N.J. Oct. 3, 2016)................................. 7, 8, 9

*Neal v. Asta Funding, Inc.*,
   No. 13-6981 (KM), 2016 U.S. Dist. LEXIS 85163 (D.N.J. June 30, 2016)......................2, 6, 7, 8

*Salerno v. UnitedHealth Group, Inc.*,
   No. 2:19-cv-18130-KM-JBC (D.N.J. Oct. 11, 2019) ..................................................................5

*Torlay v. Nelligan*,
   No. 19-6589, 2019 U.S. Dist. LEXIS 159478 (D.N.J. Sept. 18, 2019) .......................... 7, 8

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*,
   71 S.W.3d 691 (Tenn. 2002) .......................................................................................... 10

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ........................................................................................................... 3

*Walden v. Fiore*,
   571 U.S. 277 (2014) ..................................................................................................... 1, 4

**OTHER AUTHORITIES**

42 C.F.R. § 422.111(e) ........................................................................................................ 10

42 C.F.R. § 422.202(d)(4) ................................................................................................... 10

# INTRODUCTION

The Plaintiffs' opposition brief is short on the law and shorter still on citations to factual allegations. For good reason: There are no factual allegations in the complaint showing that the Court has personal jurisdiction over four of the six United defendants, that the Plaintiffs' remaining claims belong in court rather than arbitration, or that United did anything wrong by non-renewing the Plaintiffs' healthcare providers' contracts. United won't repeat all the arguments from its opening brief, but a few points in the Plaintiffs' opposition deserve brief mention.

1. The Plaintiffs argue that the Court has general jurisdiction over four defendants—UnitedHealth Group, UnitedHealthcare Community Plan, Inc., Optum, Inc., and Optum Care, Inc.—because two of them have been sued in other cases in New Jersey and because they have appointed agents for service of process. That is frivolous. General jurisdiction exists only if a business "is fairly regarded as at home" in a state; in most cases, "home" is limited to a company's place of incorporation and "principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Defending against a lawsuit or appointing an agent for service doesn't make a company "at home" in a state.

For specific jurisdiction, the Plaintiffs rely primarily on an allegation about UnitedHealthcare Insurance Company's alleged conduct—that it notified the providers' patients in 2019 that their providers were leaving United's network. That allegation is irrelevant: UnitedHealthcare Insurance Company did not move to dismiss for lack of personal jurisdiction, and that entity's alleged contacts don't establish personal jurisdiction over any other defendant. In any case, the Plaintiffs have no factual allegations or evidence that UnitedHealth Group, UnitedHealthcare Community Plan, Inc., Optum, Inc., and Optum Care, Inc. have suit-related contacts creating the required "substantial connection" with New Jersey. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

2. The Court should send the remaining claims—against UnitedHealthcare Insurance Company and Riverside Medical Management—to arbitration. The Plaintiffs don't dispute that this Court did so last year or that issue preclusion attaches to the Court's October 2019 order.

Even if the Court were starting on a blank slate, the same result would obtain. The Plaintiffs argue that they did not sign United's contracts with the providers, but that misses the point. United

has never argued that the Plaintiffs are signatories. What it *has* argued is that the Plaintiffs may not ignore the contracts' arbitration agreements while claiming that United deprived them of revenue that they would have received only because of the contracts' reimbursement provisions. The law is clear: Equitable estoppel applies when a plaintiff "knowingly seek[s]" benefits from a contract or "assert[s] claims based on the contract." *Neal v. Asta Funding, Inc.*, No. 13-6981 (KM), 2016 U.S. Dist. LEXIS 85163, at *54 (D.N.J. June 30, 2016). That is what the Plaintiffs are doing.

3. The Plaintiffs ignore most of United's alternative arguments for dismissal under Rule 12(b)(6). The Plaintiffs argue, for example, that they have pleaded a conspiracy claim, but they don't cite a single factual allegation plausibly suggesting that any defendant agreed with another defendant to do *anything*, much less to commit a tort. The same is true of the Plaintiffs' other claims; the Plaintiffs don't cite factual allegations supporting any element of those claims.

At the 12(b)(6) stage, a plaintiff must do more than argue in conclusory fashion that it has stated a claim. It must point to factual allegations plausibly supporting every element of every claim. The Plaintiffs haven't even tried to do that.

## ARGUMENT

The Plaintiffs cite no evidence showing that this Court has general or specific jurisdiction over four United defendants, so the Court should dismiss the claims against those defendants. The Court should then compel the Plaintiffs to arbitrate their claims against UnitedHealthcare Insurance Company and Riverside Medical Management.

If the Court declined to compel arbitration, then the Court should dismiss the claims against UnitedHealthcare, Riverside Medical Management, and any other remaining defendants. The Plaintiffs cite no factual allegations supporting any element of their claims, much less all of them.

**I.     THE COURT LACKS PERSONAL JURISDICTION OVER FOUR OF THE DEFENDANTS.**

The Plaintiffs focus primarily on general jurisdiction even though they don't dispute that UnitedHealth Group, UnitedHealthcare Community Plan, Optum, Inc., and Optum, Inc. are incorporated and have their principal places of business in states other than New Jersey. *Cf.* Dkt. 19-

1, Br. 7. In most cases, a company is subject to general jurisdiction only in those two places. *Daimler*, 571 U.S. at 137.

Ignoring the law, the Plaintiffs argue that the Court has general jurisdiction over UnitedHealth Group and Optum, Inc. because they have "defended claims, [and] at least in one case they prosecuted a counterclaim" in New Jersey. Dkt. 21, Opp. 15 (citing 2002 case). To state the argument is to understand its frivolity. A company does not make itself "at home" in a state when it defends itself against a lawsuit there.

The Plaintiffs also argue that the Court has general jurisdiction because "United is . . . registered to do business and have agents for the receipt of process in New Jersey . . . ." Dkt. 21, Opp. 16. The Plaintiffs do not identify which United defendant they were referring to and they submit no evidence supporting their argument, but in any event, the cases confirm that a company does not make itself "at home" in a state if it registers to do business there or appoints an agent for service of process. *See, e.g.*, *Dutch Run-Mays Draft, LLC v. Wolf Block, LLP*, 450 N.J. Super. 590, 606, 164 A.3d 435, 444 (Super. Ct. App. Div. 2017) ("[W]e conclude reliance of an entity's business registration to establish general jurisdiction is belied by the holding set forth in *Daimler*'s clear narrow application of general jurisdiction."); *see also Horowitz v. AT&T Inc.*, No. 3:17-cv-4827-BRM-LHG, 2018 U.S. Dist. LEXIS 69191, at *36 (D.N.J. Apr. 25, 2018) (same).

The Plaintiffs' specific-jurisdiction arguments are no better. The Plaintiffs argue that "United wrongly notified patients" that their providers were being non-renewed and allegedly provided "false and misleading information to these patients" (Dkt. 21, Opp. 17), but they don't identify which defendant supposedly did those things. In any case, the cited allegations—wrong and conclusory as they are—concern UnitedHealthcare Insurance Company, which did not assert a personal-jurisdiction defense. The defendants that did—UnitedHealth Group, UnitedHealthcare Community Plan, Optum, Inc., and Optum Care, Inc.—have no suit-related contacts with New Jersey and certainly no contacts creating a substantial connection with the State. The Court may not exercise specific jurisdiction over those defendants based on their affiliate's alleged conduct. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also* Dkt. 19-1, Br. 8.

The Plaintiffs also argue that the Court has specific jurisdiction over UnitedHealthcare Community Plan, Inc. because a footer in a Provider Manual for New Jersey says "UnitedHealthcare Community Plan of New Jersey" and links to a website called "UHCprovider.com/njcommunityplan." Dkt. 21, Opp. 15–16. The Plaintiffs misunderstand the point of a trade name. United submitted evidence confirming that (i) UnitedHealthcare Community Plan, Inc.—a Michigan corporation—does not contract with plan members in New Jersey or administer any United products there, (ii) two non-parties (AmeriChoice of New Jersey and Oxford Health Plans (NJ)) administer United's Medicare and Medicaid products in New Jersey, and (iii) those non-parties sometimes use the trade name "UnitedHealthcare Community Plan," including in online materials. Dkt. 19-1, Br. 8–9 (citing Ex. A, Nielsen Decl. ¶ 11). The Plaintiffs submit no evidence to the contrary. Regardless, even if the legal entity named "UnitedHealthcare Community Plan, Inc." created the cited Provider Manual or website—it did not—those materials are not suit-related contacts creating the required "substantial connection" with New Jersey. *Walden*, 571 U.S. at 284. Neither one led to this lawsuit or otherwise forms the basis of the Plaintiffs' claims.

Nor may the Plaintiffs establish the required suit-related contacts by arguing that the defendants' "conduct is directed at New Jersey healthcare Providers and practice groups and substantially affects residents within this jurisdiction." Dkt. 21, Opp. 3. The Plaintiffs cite no evidence supporting that conclusory argument; they do not identify what "conduct" they are referring to; they do not identify which defendant supposedly engaged in the unidentified conduct; and they do not explain how that conduct is a suit-related contact creating a substantial connection with New Jersey.

In the end, the Plaintiffs argue that "[i]f any doubt remains as to jurisdiction . . .[,] Plaintiffs should be afforded an opportunity to conduct discovery in this regard." Dkt. 21, Opp. 17. They cite no case holding that when a plaintiff pleads no facts supporting personal jurisdiction, the plaintiff may go on a discovery fishing expedition to determine whether those facts exist. The Plaintiffs bear the burden of proving that the Court has personal jurisdiction (*IMO Indus. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)), and they haven't done that. The Court should dismiss the claims against UnitedHealth Group, UnitedHealthcare Community Plan, Optum, Inc., and Optum Care, Inc.

4

## II. THE COURT SHOULD COMPEL THE PLAINTIFFS TO ARBITRATE THEIR CLAIMS AGAINST THE OTHER TWO DEFENDANTS.

The Court should then compel the Plaintiffs to arbitrate their claims against UnitedHealthcare Insurance Company and Riverside Medical Management. This Court already did so last year, but the same result would obtain even if the Court gave the issue a fresh look.

### A. The Court already compelled the Plaintiffs to arbitrate the same claims.

The Plaintiffs ignore most of United's arguments about the Court's 2019 order compelling the Plaintiffs to arbitrate their claims. The Plaintiffs don't dispute that the order has issue-preclusive effect.[1] *Cf.* Dkt. 19-1, Br. 10–11. The Plaintiffs also don't dispute that the order is the law of the case. *Cf. id.* at 11. Nor do they dispute that when the Court entered that order, it compelled all plaintiffs—both the medical-group plaintiffs and the provider-plaintiffs—to arbitrate their claims against United.

Instead of addressing those arguments, the Plaintiffs argue that the parties' lawyers did not mention the medical-group plaintiffs at the October 2019 hearing. Dkt. 21, Opp. 8–10. That is neither here nor there. Before the hearing, United argued that the Court should compel all plaintiffs to arbitrate their claims against all defendants under equitable-estoppel principles (Dkt. 4 at 11, *Salerno v. UnitedHealth Group, Inc.*, No. 2:19-cv-18130-KM-JBC (D.N.J. Oct. 11, 2019)), and that is what the Court did by referring all claims by all plaintiffs to arbitration. In its order closing the case, the Court drew no distinction between the provider-plaintiffs and the medical-group plaintiffs. *Id.* Dkt. 25. Nor did the plaintiffs in that case argue that the Court should treat the medical groups' claims differently than the providers' claims. *See generally id.* Dkt. 1-1. The Plaintiffs have given no reason why the Court should treat their claims in this case differently than their claims in the 2019 case.

### B. The Court should equitably estop the Plaintiffs from denying arbitration while trying to recover benefits under the provider contracts.

Even if we set aside the 2019 order, the same result would obtain under equitable-estoppel principles. The Plaintiffs' primary argument is that they did not sign the contracts between their

---

[1] The Plaintiffs argue that the parties in the two cases are not identical (Dkt. 21, Opp. 8), but that does not matter for issue-preclusion purposes because the Plaintiffs were parties to the 2019 case. *See Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995) ("Complete identity of parties in the two suits is not required for the application of issue preclusion.").

5

providers and United (Dkt. 21, Opp. 18–19), but United has never argued otherwise. United has argued that the Court should compel the non-signatory Plaintiffs to arbitrate under equitable-estoppel principles (Dkt. 19-1, Br. 11–15), not that the Plaintiffs are signatories to the contracts.

Nor has United argued that anyone other than the Court may decide whether equitable estoppel applies. *Cf.* Dkt. 21, Opp. 21–22. United argued in its opening brief that the arbitrator should decide any threshold challenges to the arbitration agreement's *enforceability* (Dkt. 19-1, Br. 16–17)—an issue that the Plaintiffs and their providers contested in the 2019 case—not that the arbitrator should decide equitable estoppel.

The Plaintiffs also mishandle the law on equitable estoppel. The Plaintiffs argue that "it is not enough that the non-signatory merely 'benefitted from the contractual relationship between the parties'" (Dkt. 21, Opp. 23), but their cited case supports United. In *Neal*, this Court held that a non-signatory "can 'embrace' a contract . . . by knowingly seeking and obtaining direct benefits from that contract." *Neal*, 2016 U.S. Dist. LEXIS 85163, at *54. That is what the Plaintiffs have done: The Plaintiffs allege that they have received significant benefits under the contracts because they ostensibly shared in their providers' revenue; they allege that United pays some of them directly under the provider contracts; and they are trying to recover more benefits—allegedly lost revenue—flowing directly from the provider contracts. Dkt. 19-1, Br. 13–15. Those are direct benefits. Indeed, if the provider contracts did not exist, then this lawsuit would not exist.

The Plaintiffs also argue that the contract containing the arbitration agreement in *Neal* referred to the non-signatory by name. Dkt. 21, Opp. 24–25. That is irrelevant. In *Neal*, this Court held that "[a] non-signatory may be bound to arbitrate where a non-signatory has obtained, or has sought to obtain, benefits flowing from the contract." 2016 U.S. Dist. LEXIS 85163, at *54–55. That rule is not limited to cases in which a contract containing an arbitration agreement names a third-party beneficiary; it hinges on whether a non-signatory seeks benefits flowing from the contract. And the rule applies here because the Plaintiffs have derived financial benefits from the provider contracts and are trying to derive more. *See* Dkt. 19-1, Br. 13.

The Plaintiffs also mishandle the second basis for equitable estoppel, which applies when a

non-signatory "seek[s] to enforce terms of that contract or assert[s] claims based on the contract." *Neal*, 2016 U.S. Dist. LEXIS 85163, at *54. The Plaintiffs argue that their "claims are entirely separate from the Provider Contract, as [are] the damages they sustained as a result of Defendants' wrongful conduct" (Dkt. 21, Opp. 25), but the complaint belies that argument. The Plaintiffs' claims are premised on the contractual reimbursement relationship between United and the Plaintiffs' providers.[2]

This Court's opinion in *Neal* confirms that equitable estoppel applies here, but so do United's other cited cases. *See, e.g.*, *Torlay v. Nelligan*, No. 19-6589, 2019 U.S. Dist. LEXIS 159478, at *10 (D.N.J. Sept. 18, 2019); *McLean v. HSBC Fin. Corp.*, No. 15-8974, 2016 U.S. Dist. LEXIS 136817, at *8–9 (D.N.J. Oct. 3, 2016). For the most part, the Plaintiffs ignore those cases—even while they spend a page trying to distinguish a case that United cited in a parenthetical. *Compare* Dkt. 21, Opp. 25–26 (citing *Bayonne Drydock & Repair Corp. v. Wartsila N. Am., Inc.*, No. 12-819, 2013 U.S. Dist. LEXIS 91089 (D.N.J. June 28, 2013)). Regardless, the cited case supports United. The court there bound a non-signatory to an arbitration agreement under the knowingly-exploits theory because the non-signatory "directly benefited" from the contract. *Bayonne*, 2013 U.S. Dist. LEXIS 91089, at *15. The same is true of the Plaintiffs.

Equitable-estoppel cases aside, the Plaintiffs also quote the provider contracts for the proposition that "any dispute between us [must] be resolved on an individual basis so that no other dispute with any third party(ies) may be consolidated or joined with our dispute." Dkt. 21, Opp. 19. That language doesn't help the Plaintiffs. It is an agreement to arbitrate disputes on an individual basis instead of through a consolidated proceeding, not an agreement that a provider's medical practice may sue United in court to recover benefits that it would have received only because of a provider contract.

The Plaintiffs chose to sue based on the non-renewal of contracts containing an arbitration agreement, so they may not "attempt[] to use the contract as a sword at the same time as using [their] non-signatory status as a shield." *Neal*, 2016 U.S. Dist. LEXIS 85163, at *57. The Court should estop

---

[2] For the same reason, it is false that "Plaintiffs' damages are independent from and not derivative of the damages claimed by the Providers" (Dkt. 21, Opp. 2) and that "the only contracts and business relationships at issue are those between Plaintiffs and the Providers who they employ or with whom they have a referral relationship, and those with their patients." *Id.* at 25.

7

the Plaintiffs from denying arbitration while claiming alleged damages that flow from their providers' contracts with United.

### C. UnitedHealthcare's affiliate may compel arbitration.

The Plaintiffs also argue that Riverside Medical Management may not compel the Plaintiffs to arbitrate their claims. Dkt. 21, Opp. 26–28. This Court held otherwise in October 2019, and it was right to do so. Non-signatories may compel arbitration of a plaintiff's claims under New Jersey law. *McLean*, 2016 U.S. Dist. LEXIS 136817, at *8; *Torlay*, 2019 U.S. Dist. LEXIS 159478, at *9 n.1. Beyond that, UnitedHealthcare Insurance Company executed the provider contracts "on behalf of itself, AmeriChoice of New Jersey, Inc., and *its other affiliates*." Dkt. 15-3 at 7 (emphasis added). Riverside is UnitedHealthcare's affiliate and may compel arbitration under that provision. *See Doyle v. Ad Astra Recovery Servs.*, 2018 U.S. Dist. LEXIS 35884, at *9 n.7 (D.N.J. Mar. 6, 2018).

Nor does *Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174 (N.J. 2013) say anything different. The Plaintiffs quote *Hirsch* for the proposition "that [the] intertwinement of claims and parties, by itself, is insufficient to warrant application of equitable estoppel" (Dkt. 21, Opp. 28), but they ignore that courts in this district have estopped a non-signatory from denying arbitration even while citing *Hirsch*. *See Neal*, 2016 U.S. Dist. LEXIS 85163, at *54 (citing *Hirsch*); *McLean*, 2016 U.S. Dist. LEXIS 136817, at *7 (citing *Hirsch*); *Torlay*, 2019 U.S. Dist. LEXIS 159478, at *9 n.1. In any case, *Hirsch* arose under different facts—including that the moving non-signatories did not know about the arbitration agreement until the lawsuit and that they "share[d] no corporate ownership" with a signatory. 215 N.J. at 180, 195. Neither is true here.

### D. The Court should decide the equitable-estoppel issue now.

In their standard-of-review section, the Plaintiffs argue that the Court should allow "limited discovery" before deciding the equitable-estoppel issue. Dkt. 21, Opp. 12. The Court should decline the invitation; discovery would add nothing. The Plaintiffs' claims—which concern United's contract non-renewal and the reimbursement relationship based on that contract—will not change with discovery. Nor do the Plaintiffs identify any additional facts that would shed light on the equitable-

8

estoppel issue. On top of that, courts often apply the equitable-estoppel doctrine without allowing discovery. *See, e.g.*, *McLean*, 2016 U.S. Dist. LEXIS 136817, at *8–9.

## III. THE COURT SHOULD ALTERNATIVELY DISMISS THE CLAIMS AGAINST ALL DEFENDANTS FOR FAILURE TO STATE A CLAIM.

If the Court does not compel arbitration, then it should dismiss the claims against UnitedHealthcare Insurance Company, Riverside Medical Management, and any remaining defendants for failure to state a claim. The Plaintiffs ignore many of United's 12(b)(6) arguments, but even when they respond, they don't cite factual allegations supporting any element of their claims.

1. The Plaintiffs spend two pages summarizing conspiracy principles (Dkt. 21, Opp. 31–32), but they identify no factual allegations plausibly suggesting that one or more defendants agreed to do *anything*—much less commit a tort. The Plaintiffs argue only that Optum Care acquired Riverside Medical Management in 2016 and that UnitedHealthcare had a "vested interest" in Riverside providers' treating United plan members.[3] Dkt. 21, Opp. 31–32. As United has explained, that speculation does not plausibly suggest an agreement between Riverside and UnitedHealthcare. Dkt. 19-1, Br. 18. There are no factual allegations connecting Riverside to UnitedHealthcare Insurance Company's non-renewal decision; there are no factual allegations that Riverside spoke with UnitedHealthcare about those providers; there are no factual allegations that Riverside knew about UnitedHealthcare's non-renewal decision or had any say in those decisions; and there are no factual allegations that UnitedHealthcare relied on factors outside of its business analysis when non-renewing the Plaintiffs' providers. The Plaintiffs' conclusory speculation about a conspiracy, "without allegations of fact that reflect joint action, [is] insufficient to meet [Rule 8's] requirement." *Adams v. Teamsters Local 115*, 214 F. App'x 167, 175 (3d Cir. 2007).

The Plaintiffs also argue that the Supreme Court's *Copperweld* decision—which held that parents and subsidiaries cannot conspire together under the law—does not apply outside the antitrust context. Dkt. 21, Opp. 33. Many courts have disagreed, extending *Copperweld*'s reasoning to civil-

---

[3] UnitedHealthcare is Optum Care's affiliate, not its parent. The Plaintiffs don't explain why UnitedHealthcare had a "vested interest" in an affiliate's providers' treating United plan members.

9

conspiracy claims. *See, e.g.*, *Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co.*, 69 F.3d 868, 871 (8th Cir. 1995); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703–04 & n.6 (Tenn. 2002). United cannot have conspired with itself.

2. The Plaintiffs cite no cases supporting their tortious-refusal-to-deal claim. They quote a 1939 Restatement of Torts for the proposition that a refusal to deal is not wrongful unless it was "a means of accomplishing an illegal effect on competition" (Dkt. 21, Opp. 35), but there are no factual allegations suggesting that United's exercising its non-renewal right was "illegal" or that it injured competition. An alleged injury to the Plaintiffs' providers—flowing from a non-renewal provision that they agreed to—is not an injury to competition, which is why the Plaintiffs cite no case holding a party liable in tort for exercising a non-renewal right. *Cf. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The Plaintiffs also ignore that under 42 C.F.R. § 422.202(d)(4), managed-care organizations may terminate providers "without cause" so long as they give 60 days' notice.

3. The Plaintiffs likewise ignore the elements of their misappropriation claim, repeating instead their conclusory argument that "Defendants wrongfully utilized patient names and contact information to which they were not entitled." Dkt. 21, Opp. 34. That argument is frivolous. Federal law required United to send its plan members notices explaining that their providers were leaving United's network (42 C.F.R. § 422.111(e)), and the Plaintiffs don't explain how United could have misappropriated its own plan members' names and addresses given that it was in rightful possession of that information. Nor do the Plaintiffs cite any facts supporting the five elements of a misappropriation claim against any defendant. *Cf.* Dkt. 19-1, Br. 22 (elements of claim).

The Plaintiffs are also wrong that 42 C.F.R. § 422.111(e) "does not specifically address patient data." Dkt. 21, Opp. 34. The regulation requires Medicare Advantage organizations to "provide written notice of a termination of a contracted provider at least 30 calendar days before the termination effective date *to all enrollees* who are patients seen on a regular basis by the provider." 42 C.F.R. § 422.111(e) (emphasis added). United could not have complied with that regulation unless it "used" its own plan members' names and addresses when sending them notices.

4. The Plaintiffs don't cite factual allegations supporting any of the four elements of their unjust-enrichment claim. *Cf.* Dkt. 19-1, Br. 24 (explaining elements). The Plaintiffs' conclusory argument that "UHC benefited financially at the expense of the Plaintiffs" (Dkt. 21, Opp. 34) is not a factual allegation supporting any element.

5. The Plaintiffs' unfair-competition claim fails for the same reasons. The Plaintiffs recognize that the claim is limited to the misappropriation context, but they offer no argument other than a sentence incorporating their misappropriation and unjust-enrichment arguments. Dkt. 21, Opp. 35. Those arguments are frivolous, so the unfair-competition argument is too.

6. The same is true of the Plaintiffs' tortious-interference claim.[4] The Plaintiffs repeat their conclusory allegation that United somehow interfered with the Plaintiffs' or their providers' relationships with patients, but they don't respond to UnitedHealthcare's argument that it is not a stranger to the providers' relationships with its own plan members. *Cf.* Dkt. 19-1, Br. 24. Nor do the Plaintiffs cite any facts suggesting that United interfered with the contracts between the Plaintiffs and their providers or that it did so intentionally. *Cf. id.* at 25. The Plaintiffs also cite no factual allegations suggesting that United acted with malice toward the Plaintiffs. *Cf. id.* And they have no response to United's arguments that (i) that "there are no factual allegations suggesting that any allegedly wrongful and intentional interference by United caused 'loss of the contract' between the Plaintiffs and their providers, as required for the claim" or that (ii) "the Plaintiffs' claim also fails because it hinges on the providers' economic relationship with United." Dkt. 19-1, Br. 26.

If the Court does not compel arbitration, then it should dismiss the Plaintiffs' claims without leave to amend. *Cf. Baker v. Wittevrongel*, 363 F. App'x 146, 149 (3d Cir. 2010) (claims are dismissed with prejudice when amendment would prove futile or inequitable). Amendment would prove futile because the Plaintiffs' claims are frivolous; United did nothing wrong by exercising its contractual right to non-renew the Plaintiffs' providers' contracts. Amendment would also prove inequitable

---

[4] The Plaintiffs mislead by arguing that United has said that "the Practice Groups are somehow parties to the Physician Contracts." Dkt. 21, Opp. 30. United never said that, which is why the Plaintiffs do not cite United's brief when mischaracterizing it.

11

because the Plaintiffs raised the same claims last year; they had twelve months in the interim to file arbitrations; and United should not have to bear the costs associated with defending against a *third* frivolous putative class-action lawsuit concerning contract non-renewals that happened a year ago.

Respectfully submitted on October 26, 2020.

/s/ Steven Penaro
Steven L. Penaro
D.N.J. ID # 030182009
**ALSTON & BIRD LLP**
90 Park Ave
New York, NY 10016
Tel: 212-210-9460
Fax: 212-922-3960
steve.penaro@alston.com

Brian D. Boone
*Pro hac vice motion forthcoming*
**ALSTON & BIRD LLP**
Bank of America Plaza, Suite 4000
101 S. Tryon St.
Charlotte, NC 28280
Tel: 704.444.1000
Fax: 704.444.1111
brian.boone@alston.com

Lee A. Deneen
Fiona O'Carroll
Anderson S. B. Kemp
*Pro hac vice motions forthcoming*
**ALSTON & BIRD LLP**
1201 W. Peachtree St., Suite 4900
Atlanta, GA 30309
Tel: 404.881.7000
Fax: 404.881.7777
lee.deneen@alston.com

*Counsel for UnitedHealth Group, Inc.,*
*UnitedHealthcare Insurance Company, UnitedHealthcare Community Plan, Inc.,*
*Optum, Inc., Optum Care, Inc., and Riverside Medical Management, LLC*