# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SALERNO MEDICAL ASSOCIATES, LLP; SENIOR HEALTHCARE OUTREACH PROGRAM, INC.; and SM MEDICAL LLC, | |
| **Plaintiffs,** | |
| **v.** | Civ. No. 20-10539 (KM) (JBC) |
| RIVERSIDE MEDICAL MANAGEMENT, LLC; UNITED HEALTHCARE COMMUNITY PLAN, INC.; OPTUM, INC.; OPTUM CARE, INC.; UNITEDHEALTH GROUP, INC.; UNITEDHEALTHCARE INSURANCE COMPANY; and JOHN DOES 1–20, | **OPINION** |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Salerno Medical Associates, LLP, Senior Healthcare Outreach Program, Inc., and SM Medical, LLC are medical groups that employ healthcare providers. Those providers had agreements with the health insurer UnitedHealthcare Insurance Company ("UHIC") to provide healthcare to UHIC beneficiaries. UHIC attempted to remove the providers from its network and directed patients to Riverside Medical Management, LLC, a medical group under the umbrella of UHIC's parent company. The Medical Groups sued United[1] for this move, asserting various state-law claims. United has filed a motion (DE 19)[2] to

---

[1] "United" will refer collectively to defendants, including UHIC, Riverside, and two other United entities, UnitedHealth Group, Inc., and UnitedHealthcare Community Plan, Inc., plus Optum, Inc., and Optum Care, Inc., whcih are owned by UnitedHealth Group.

[2] Certain citations to the record are abbreviated as follows:

(1) dismiss claims against certain defendants for lack of personal jurisdiction, *see* Fed. R. Civ. P. 12(b)(2); and

(2) either

    (a) compel arbitration of the remaining claims, *see* 9 U.S.C. § 4; or (b) dismiss the remaining claims for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6).

For the following reasons, the motion to dismiss for lack of personal jurisdiction is **GRANTED** as to defendants UnitedHealth Group, Inc., UnitedHealthcare Community Plan, Inc., Optum, Inc., and Optum Care, Inc. The motion to compel arbitration is **GRANTED** as to UHIC and **DENIED** as to Riverside. The remaining claims against Riverside are **STAYED** pending the arbitration, so the motion to dismiss is **ADMINSTRATIVELY TERMINATED** without prejudice to renewal if appropriate.

## I. BACKGROUND

UHIC[3] offers healthcare plans to Medicare and Medicaid recipients. (Compl. ¶¶ 12–14.) To that end, UHIC maintains agreements with healthcare providers to serve its plan members as in-network providers. (*Id.* ¶ 15.) *See*

---

DE = docket entry

Compl. = Complaint (DE 14-2)

Mot. = United's Brief in Support of its Motion to Dismiss (DE 19-1)

Opp. = Medical Groups' Brief in Opposition to United's Motion to Dismiss (DE 21)

Reply = United's Reply Brief in Support of its Motion to Dismiss (DE 23)

*Salerno I*, DE _ = docket entries in *Salerno v. UnitedHealthcare Grp., Inc.*, Civ. No. 19-18130 (D.N.J.).

Agreement = Physician Contract (DE 19-3)

Nielsen Decl. = Declaration of Michele Nielsen (DE 19-2)

[3] The Complaint makes its allegations collectively against the defendants (except Riverside). But the contracts that form the basis of this case, and which I may consider, *see Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020), make clear that the Medical Groups' providers dealt with UHIC. (*See* Nielsen Decl. ¶ 10; Agreement at 1.)

*generally MHA, LLC v. Amerigroup Corp.*, Civ. No. 18-16042, 2021 WL 1976787, at *1 (D.N.J. May 17, 2021). The Medical Groups employ healthcare providers in New Jersey, and their providers had such in-network agreements with UHIC. (Compl. ¶¶ 20, 26; *see* Nielsen Decl. ¶ 10; Agreement at 1.) UHIC would directly pay the Groups, which would then pay their providers, or else UHIC would pay the providers and the Groups would share the revenue. (*Id.* ¶ 28.)

UHIC informed providers within the Medical Groups that they would not remain in-network following expiration of their agreements. (*Id.* ¶ 40.) This decision allegedly lacked any proper basis and flouted procedural requirements applicable to Medicare plans. (*Id.* ¶ 42.) UHIC mailed letters to the providers' patients informing them of the upcoming termination. (*Id.* ¶ 46.) UHIC also informed patients that they could not transfer to other providers in the same medical group. (*Id.*) Thereby, UHIC allegedly tried to steer patients to a United-affiliated provider, Riverside. (*Id.* ¶¶ 85–92.)

In response, the providers and Medical Groups sued most of the defendants here and moved for a temporary restraining order preventing them from dropping the providers. (*Id.* ¶ 51; *see generally Salerno v. UnitedHealthcare Grp., Inc.* (*Salerno I*), Civ. No. 19-18130 (D.N.J.).) The *Salerno I* plaintiffs noted that the in-network agreements had an arbitration clause but argued that such clauses were unenforceable because they did not clearly express their purpose. (*Salerno I*, DE 1-1 at 22.) The defendants responded that a TRO should be denied because the in-network agreements required arbitration, and the arbitrability of the claims was an issue reserved, per the arbitration clause, to the arbitrator. (*Salerno I*, DE 4 at 1, 6–7.) No party distinguished between the Groups and the providers for purposes of the arbitration issue. (*See id.* at 4–5; *Salerno I* DE 1-1 at 1.)

At the end of a hearing, I explained that the proper remedy appeared to be an order preventing changes to the UHIC network for 30 days so that any plaintiffs could bring their claims before an arbitrator who could decide arbitrability. (*Salerno I*, DE 21 at 30:14–15, 31:13–17.) I directed the parties to

draft an order to that effect. (*Id.* at 42:7–8.) I entered an order that, among other things, (1) "referred" "Plaintiffs' claims in this case" to arbitration for "an initial determination of arbitrability," (2) prevented defendants from dropping any providers until a ruling on arbitrability, and (3) stayed and administratively terminated the case without prejudice to reopening if any claims were found not to be arbitrable. (*Salerno I*, DE 25.)

Some providers, but not the Medical Groups, then pursued arbitration, resulting in an award reinstating those providers to UHIC's network. (Compl. ¶¶ 54–66.) UHIC then reinstated the remaining providers (*id.* ¶ 66) without the necessity of a court order.

Although the providers were and remain reinstated, the Medical Groups have brought this action to recover damages arising from UHIC's attempted terminations. (*See id.* ¶ 111.) The Groups bring claims under state law for (1) civil conspiracy, (2) tortious refusal to deal with the Groups, (3) unfair competition, (4) unjust enrichment, (5) tortious interference with contracts and prospective economic advantage, and (6) misappropriation of trade secrets and/or proprietary and confidential information. (*Id.* ¶¶ 119–43.) United moves to (1) dismiss for lack of personal jurisdiction, (2) compel arbitration, and/or (3) dismiss for failure to state a claim. (Mot.)

## II. DISCUSSION

### A. Personal Jurisdiction

I first take up personal jurisdiction. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017) ("A court must have . . . power over the parties before it (personal jurisdiction) before [the court] can resolve a case."). United's personal jurisdiction challenge pertains to four defendants: UnitedHealth Group, UnitedHealthcare Community Plan, Optum, and Optum Care. (Mot. at 7–9.)

A federal court may exercise personal jurisdiction over a defendant to the extent authorized by state law. Fed. R. Civ. P. 4(k)(1)(A). New Jersey provides for jurisdiction coextensive with constitutional due process. *Miller Yacht Sales,*

*Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4). Due process allows for general or specific jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020).[4]

A court may exercise general jurisdiction over a corporation when the corporation has "continuous and systematic contacts with the forum state" such that it is "essentially at home" there. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (quotation marks and citation omitted). A corporation is "at home" at least where it is incorporated or has its principal place of business. *Id.* (citation omitted). None of the four defendants has its place of incorporation or principal place of business in New Jersey. They are either Delaware or Michigan corporations with their principal places of business in Michigan or Minnesota. (Nielsen Decl. ¶¶ 3–7.) No viable basis for general jurisdiction is suggested.

Nonetheless, a court may have specific jurisdiction when the defendant has contacts with the forum, and the plaintiff's claims "arise out of or relate to" those contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (citation omitted). The Complaint, however, does not make any allegations about these four defendants' specific conduct. Rather, the Complaint is concerned with UHIC, which had the underlying agreements with providers, and Riverside. At most, the four defendants are alleged to be related to UHIC and Riverside within the complex United corporate family tree. (*See* Nielsen Decl. ¶¶ 7, 9; Compl. ¶¶ 6–9.) That is not enough. The Medical Groups

---

[4] The plaintiff bears the burden of establishing sufficient facts to show that personal jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). Initially, a court accepts the plaintiff's allegations as true and construes disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Where factual allegations are disputed, however, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) (citation omitted). If the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

must point to some conduct of the four defendants in or directed at New Jersey with UHIC and Riverside that forms part of the claims. *See Rickman v. BMW of N. Am., LLC*, Civ. No. 18-4363, 2021 WL 1904740, at *5–6 (D.N.J. May 11, 2021) (allegations sufficient to warrant jurisdictional discovery where parent corporation established American operation in New Jersey and funneled its activities through there). They have not done so. Thus, they have not made out even a prima facie case for personal jurisdiction.

The motion to dismiss claims against UnitedHealth Group, UnitedHealthcare Community Plan, Optum, and Optum Care, for lack of personal jurisdiction will be granted. The remaining defendants, then, are UHIC and Riverside.

## B. Arbitration

United seeks to compel arbitration of the remaining claims against UHIC and Riverside. The Medical Groups are not signatories to the in-network agreements, so United relies on two less direct theories to compel arbitration: (1) issue preclusion, based on the determination in *Salerno I* the Medical Groups' claims belong in arbitration; or (2) equitable estoppel, pursuant to which the Medical Groups are justly bound by arbitration clauses in their providers' in-network agreements.[5] Before I address these arguments, however, I will assure myself that I am not barred from doing so by the in-network agreements' delegation clause.

---

[5] "[W]hen it is clear on the face of the complaint [or documents relied upon by the complaint] that a validly formed and enforceable arbitration agreement exists and a party's claim is subject to that agreement, a district court must compel arbitration under a Rule 12(b)(6) pleading standard . . . ." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020). But if (1) the materials subject to review on a Rule 12(b)(6) motion are unclear as to the arbitrability question, or (2) the parties have come forward with facts putting the arbitrability question at issue, then the court may order limited discovery and then consider the arbitrability question on a summary judgment standard. *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 774 (3d Cir. 2013) (quotation marks and citation omitted).

### 1. Delegation Clause

The in-network agreements provide that arbitration is governed by the American Arbitration Association's ("AAA") Rules. (Agreement at 5) The AAA Rules provide that the arbitrator is to decide "the existence, scope, or validity of the arbitration agreement" and the "existence or validity of a contract of which an arbitration clause forms a part." Am. Arbitration Ass'n, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a), (b). The parties' agreement to have an arbitrator decide gateway issues of arbitrability is known as a "delegation clause." *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020). Incorporating the AAA's rules creates a delegation clause, which a court must generally enforce. *Richardson v. Coverall N. Am.*, 811 F. App'x 100, 103–04 (3d Cir. 2020).

Despite the delegation clause here, United's arguments are not for an arbitrator to decide, as United acknowledges.[6] Because the Medical Groups are not signatories to the in-network agreements, the threshold issue is whether the Groups are bound by any agreement with the United defendants at all. "Arguments that an agreement to arbitrate was never formed . . . are to be heard by the court even where a delegation clause exists." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018); *see also, e.g.*, *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("[P]arties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place."); *Sicily by Car S.p.A. v. Hertz Glob. Holdings, Inc.*, Civ. No. 14-6113, 2015 WL 2403129, at *3 (D.N.J. May 20, 2015) (equitable estoppel arguments, which go to whether a valid agreement exists, must be decided by the court); *GNH Grp., Inc. v. Guggenheim Holdings, LLC*, No. 19-1932, 2020 WL 4287358, at *5 (D. Del. July 27, 2020) (same). Accordingly, it is for the court, not the arbitrator, to rule on the issue of arbitrability as between United and the Groups.

---

[6]     United expressly disavows reliance on the delegation clause and argues that I should decide its arguments. (Reply at 6.)

## 2. Issue Preclusion

United argues that my order in *Salerno I* binds the Medical Groups to arbitrate their claims. (Mot. at 10.) Here, United relies on the doctrine of issue preclusion, which prevents relitigation of an issue of fact or law decided in a prior case.[7] "The idea [behind issue preclusion] is straightforward: Once a court has decided an issue, it is forever settled as between the parties . . . ." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (quotation marks and citation omitted). In particular, once a court has decided the arbitrability of a claim, subsequent courts will be bound by that decision if the requisites of issue preclusion are met. *E.g.*, *Haber v. Biomet, Inc.*, 578 F.3d 553, 557 (7th Cir. 2009). Issue preclusion applies when "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *U.S. ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 316 (3d Cir. 2019) (citation omitted). United has failed to demonstrate that the first three elements are met.

On the first element, United posits that the issues common to *Salerno I* and this case are (a) whether the Medical Groups must arbitrate their claims against United defendants and (b) whether an arbitrator decides arbitrability. (Mot. at 10.) But the issue was not so refined in *Salerno I*. Rather, the issue there was simply whether the in-network agreements—to which the Groups are *not* parties—required an arbitrator to decide arbitrability. No one nailed down whether the Groups were bound by the arbitration clause. Instead, arbitration generally posed an "initial hurdle" because the thrust of the claims derived

---

[7]     United briefly argues that the *Salerno I* order binds the Medical Groups as the law of the case. (Mot. at 11.) The doctrine of law of the case prevents relitigation of issues in the same case, while issue preclusion applies in a later case. *United States v. Reyes-Romero*, 959 F.3d 80, 93 (3d Cir. 2020). This case is a subsequent action, not a later proceeding within *Salerno I*, because it was initiated by a different complaint with (albeit slightly) different parties and claims. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint . . . ."). Issue preclusion is the correct lens here.

from alleged breaches of in-network agreements which contained arbitration clauses. (*See Salerno I*, DE 21 at 4:5–6.) That was enough to warrant initially sending the parties to arbitration to work out arbitrability. But United stretches the Order too far to say that the Court finally decided the complex sub-issue of which parties precisely—including non-signatories—were bound to arbitrate.

Determining whether issues in two litigations are the same is "[o]ne of the most difficult problems" in issue preclusion. Restatement (Second) of Judgments § 27 cmt. c (Am. Law Inst. 1982). But one guidepost, at least, is whether "the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (citation omitted). The same legal rules and facts necessary to compel the Medical Groups to arbitrate were not truly at issue in *Salerno I*. Binding non-signatories to arbitration agreements constitutes its own subspecies of arbitration law. (*See* Section II.B.3, *infra*.) None of the applicable doctrines were raised or discussed, let alone applied, in *Salerno I*. Nor were facts elicited specific to the Groups. Accordingly, there is no identity of issues.

For similar reasons, United has not shown that the second element is met. An issue is "actually litigated" when it is "properly raised, by the pleadings or otherwise," "submitted for determination," and "is determined." *ITT Corp. v. Intelnet Int'l*, 366 F.3d 205, 211 n.10 (3d Cir. 2004) (citation omitted). In *Salerno I*, neither the parties' briefs nor their oral arguments made any attempt to distinguish between the Medical Groups and the providers for arbitration purposes. (*Salerno I*, DE 4 at 4–5, DE 1-1 at 1.) The parties did not raise or poise for decision the legal issues necessary to compel a non-signatory to arbitrate. Again, *Salerno I* moved quickly; it involved diverse parties; and the arbitration issue arising from the key agreements was enough to temporarily divert the case, which the parties never resumed. All that is to say that specific sub-issues affecting individual parties could not be and were not litigated.

Finally, the *Salerno I* order was not a final judgment. Although "[t]here is no bright-line rule regarding what constitutes a 'final judgment' for issue preclusion," finality can mean "that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012) (quotation marks and citation omitted). I consider "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Id.* (quotation marks and citation omitted). None of those factors favor United: (1) the issue of the Medical Groups' particular obligation to arbitrate was never heard, (2) I never addressed that issue in an opinion, and (3) a stay of litigation without prejudice is not, for example, final in the sense of being appealable. *See* 9 U.S.C. § 16(b)(1) (stay of action pending arbitration is not appealable); *Def. Distrib. v. Att'y Gen. of N.J.*, 972 F.3d 193, 198–99 (3d Cir. 2020) (orders staying a case without prejudice, even with a pending motion for injunctive relief, are generally not appealable). Thus, there was no final judgment.

Because United has not satisfied several elements of issue preclusion, I decline to find that the Medical Groups are bound by *Salerno I* to arbitrate.

### 3. Equitable Estoppel

I must review whether United can compel arbitration of the claims against UHIC and Riverside based on the arbitration agreements themselves, *via* equitable estoppel.

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements . . . ." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C. § 2). "Before compelling a party to arbitrate under the FAA, we must consider . . . 'whether the parties have a valid arbitration agreement.'" *Bacon v. Avis Budget Grp.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Lamps Plus*, 139 S. Ct. at 1416). Ordinarily, only signatories to a contract with an arbitration clause have a valid arbitration agreement. *See Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014). But a non-

signatory "may be equitably bound to arbitrate under traditional principles of contract and agency law." *Id.* (quotation marks and citation omitted). For such principles, we look to state law. *Id.* Here, the parties agree that New Jersey law applies. (Mot. at 11–15; Opp. at 22–28; *see also* Agreement at 6 (provider agreement stating that "Federal law and the applicable law of the jurisdiction where you provide health care services govern our agreement.").)

United invokes the New Jersey state-law doctrine of equitable estoppel to compel arbitration. New Jersey recognizes that "equitable estoppel may be used in certain circumstances as a basis to compel arbitration," but "its use has limited applicability." *Hirsch v. Amper Fin. Servs., LLC*, 71 A.3d 849, 859 (N.J. 2013). Equitable estoppel is "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." *Id.* at 857. The key factor is whether "a party detrimentally rel[ied] on another party's conduct" as "[t]he doctrine is designed to prevent a party's disavowal of previous conduct if such repudiation would not be responsive to the demands of justice and good conscience." *Id.* at 860 (citation omitted); *see also Crystal Point Condo. Ass'n, Inc. v. Kinsale Ins. Co.*, 247 A.3d 405, 414–15 (N.J. Super. Ct. App. Div. 2021) (declining to compel arbitration when there was no assertion of detrimental reliance); *Joaquin v. DIRECTV Grp. Holdings, Inc.*, Civ. No. 15-8194, 2016 WL 4547150, at *5 (D.N.J. Aug. 30, 2016) (same).

I address how this standard applies, first as to UHIC and then as to Riverside.

### a. UHIC

Equitable estoppel precludes the Medical Groups from resisting arbitration of claims against UHIC. The Groups engaged in conduct whereby UHIC expected that the disputes between them would be resolved in arbitration. Although the Groups, along with the providers, resisted arbitration

in *Salerno I*, they never raised the issue that they could not be compelled to arbitrate as non-signatories. Rather, they, and United in response, treated the arbitration issue as unitary—*i.e.*, their arguments applied in blanket fashion to all the *Salerno I* plaintiffs. All parties proceeded accordingly. The Groups were then given an opportunity to arbitrate and chose not to do so, letting certain providers take the lead. They now seek to use the arbitration award netted by the providers as the basis for a bank-shot litigation to establish that UHIC acted unlawfully. (*See* Compl. ¶ 111.) Yet UHIC had every reason to think that its disputes with the Groups and their providers were disposed of by the arbitration. "Equitable estoppel seeks to prevent this kind of gamesmanship." *Torlay v. Nelligan*, Civ. No. 19-6589, 2019 WL 4509326, at *4 (D.N.J. Sept. 18, 2019).

From another angle, a party cannot, with one hand, rely on a contract as the basis for its claims, and with another, repudiate that contract's arbitration clause. *E.g.*, *Facta Health, Inc. v. Pharmadent, LLC*, Civ. No. No. 20-9631, 2020 WL 5957619, at *3 (D.N.J. Oct. 8, 2020); *Neal v. Asta Funding, Inc.*, Civ. No. 13-6981, 2016 WL 3566960, at *18 (D.N.J. June 30, 2016); *see Hirsch*, 71 A.3d at 860 (equitable estoppel "prevent[s] a party's disavowal of previous conduct if such repudiation would not be responsive to the demands of justice and good conscience" (citation omitted)); *accord E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199–200 (3d Cir. 2001) (collecting cases from various jurisdictions). By putting the in-network agreements at issue here, the Medical Groups forced UHIC to litigate the meaning of such agreements. Only if the Groups were conveying an intent, in some way, to be subject to those agreements, could they justify compelling UHIC, as signatory, to litigate their meaning in court rather than in arbitration. *Sicily by Car S.p.A.*, 2015 WL 2403129, at *5.

Nor can the Medical Groups successfully contend that this suit is entirely divorced from the in-network agreements. For example, they allege that UHIC tortiously refused to deal with *them* by not renewing *their providers'*

*contracts*. (Comp. ¶ 126.) Further, they allege that UHIC unfairly competed against *them* by not renewing those contracts. (*Id.* ¶ 130.) Most of all, they derive patients and payments by virtue of the agreements, and that is presumably the source of any damages. (*Id.* ¶ 28.) The agreements are thus "squarely at issue" here, and it matters not that the Groups use tort claims as a Trojan horse. *McLean v. HSBC Fin. Corp.*, Civ. No. 15-8974, 2016 WL 5796865, at *3 (D.N.J. Oct. 3, 2016). Because the Groups rely on the agreements, and those agreements have an arbitration clause, the Groups are equitably bound, for the sake of justice and consistency, to respect that clause.

### b. Riverside

A harder question is whether I can compel arbitration of the claims between the Medical Groups and Riverside. (*See* Opp. at 26–28.) Neither is a signatory to the in-network agreements. I address (i) whether equitable estoppel could nonetheless apply, (ii) United's alternative argument that I can interpret the in-network agreements to include Riverside as a signatory, and (iii) how to dispose of the claims against Riverside.

### i. Equitable Estoppel

Equitable estoppel does not permit Riverside to compel arbitration here. The Third Circuit has expressed skepticism that a non-signatory can compel another non-signatory to submit to arbitration. *See Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010) ("[Defendant] offers no authority for its contention that a non-signatory to an arbitration agreement can compel another non-signatory to arbitrate certain claims, and we have found none."). Other courts have rejected the notion entirely. *E.g.*, *Ocean M, Ltd. v. Dorr*, Civ. No. 18-24530, 2019 WL 2254832, at *7 (S.D. Fla. Feb. 15, 2019) (collecting cases). Closer to home, there is no New Jersey precedent greenlighting such a novel application of equitable estoppel. To the contrary, New Jersey courts caution against requiring non-signatories to arbitrate. *See Hirsch*, 71 A.3d at 861–62 ("[W]hen parties have not expressly agreed to arbitrate their disputes . . . careful scrutiny is necessary to determine whether arbitration is nonetheless appropriate."); *Crystal Point*, 247 A.3d at 414 ("The [*Hirsch*] Court

cautioned against expanding the scope of the arbitration contract.").[8] All said, then, the absence of precedent coupled with New Jersey courts' general reluctance to apply equitable estoppel add up to a holding that I will not compel arbitration of claims as between two non-signatories.[9]

### ii. Language of the Agreements

United argues that I can compel arbitration of claims against Riverside based on language of the in-network agreements that extends their scope to include "affiliates." (Reply at 8.)

Those agreements generally provide that "[UHIC] is entering into this agreement with you [the provider]. It is doing so on behalf of itself, AmeriChoice of New Jersey, Inc., and *its other affiliates* for certain products and services we offer our customers, all of which we describe in the attached Appendix 2." (Agreement at 2 (emphasis added).) Appendix 2 describes "benefit contracts" it provides to customers, *i.e.*, contracts that offer health-insurance coverage to participants in certain government programs. (*Id.* at 9.) The arbitration clause then uses the terms "we" and "us" to describe the UHIC entities' obligation to arbitrate. (*Id.* at 5.) Finally, the signature page contains a space for "[UHIC], on behalf of itself, AmeriChoice of New Jersey, Inc. and its other affiliates." (*Id.* at 7.) In United's view, "affiliates," as used throughout the in-network agreement, includes Riverside, so Riverside is a signatory that can compel arbitration.[10]

---

[8]     Relatedly, the New Jersey Supreme Court has rejected the notion that parties and claims can be sent to arbitration simply because they are so intertwined with a signatory to an arbitration agreement. *Hirsch*, 71 A.3d 861.

[9]     Even I tried to apply equitable estoppel, the standard would not be satisfied as to Riverside. Riverside was not involved in the arbitration (*see* Compl., Ex. C), so my reasoning in the previous section does not apply. In other words, Riverside did not detrimentally rely on any of the Medical Groups' and providers' arbitration conduct because it was not involved. As such, equitable estoppel is inapt.

[10]     United provided six sample provider agreements. (DE 19.) Five of them use this same "affiliates" language. One, however, does not include a reference to affiliates. (*See* DE 19-6 at 2 ("AmeriChoice of New Jersey, Inc. ("AmeriChoice") is entering into this agreement with you for certain products and services we offer our customers . . . .").)

This is a question of whether the in-network agreements evince a valid agreement to arbitrate between Riverside and providers. For that pump-priming question—whether there is an agreement to arbitrate at all—I apply "ordinary state-law principles that govern the formation of contracts, not . . . a presumption in favor of arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 526 (3d Cir. 2009) (quotation marks and citation omitted). Under New Jersey precedent, I consider "the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." *Barila v. Bd. of Educ. of Cliffside Park*, 230 A.3d 243, 255 (N.J. 2020) (citation omitted). Most of all, I apply the contract's plain language, *id.*, taking care "to read the document as a whole in a fair and common sense manner" and avoid interpretations that would "render . . . terms meaningless," *Hardy ex. rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169–70 (N.J. 2009).

United's interpretation fails for two reasons.

First, United ignores the language that immediately follows "affiliates": "for certain products and services we offer our customers, all of which we describe in the attached Appendix 2." (DE 15-3 at 2.) Appendix 2 describes benefit contracts, *i.e.*, agreements to provide some form of health insurance. As such, the plain language of the contract indicates that it encompasses not any and all entities affiliated with United, but United affiliates *who provide health insurance benefits*. Riverside is a medical group/practice, not a provider of health insurance. (*See* Compl. ¶ 6.) Riverside, then, is not the kind of affiliate to which the contract refers. That interpretation makes sense and comports with the purpose of the contract. The in-network agreements are intended to be agreements between providers and UHIC, mainly about providing healthcare to UHIC insureds. It would not make sense for a competing provider to be deemed a party to that contract.

---

Thus, United's "affiliate" argument, even if persuasive, would not necessarily apply to all provider agreements.

Second, even if I ignored the "for certain products" language, I could not find Riverside to be an affiliate of UHIC on this record. Riverside is a limited liability company that, to simplify, is three layers removed from Optum, Inc. (Nielsen Decl. ¶ 9.) UnitedHealth Group—not UHIC—owns Optum. (*Id.* ¶ 7.) "Affiliate" usually means "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate, Black's Law Dictionary* (11th ed. 2019). I can discern no direct—or even indirect—holdings or indicia of control by UHIC over Riverside. As a result, I cannot say that Riverside comes within the ordinary understanding of affiliate such that I could compel arbitration.

In sum, I cannot construe the in-network agreements to encompass Riverside as a signatory. Thus, United's alternative theory for compelling arbitration of the claims against Riverside must be rejected. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or *by any parties*, that are not already covered in the agreement" (emphasis added)).

### iii. Disposition

The question then becomes what to do about the claims against Riverside. To take stock of where we are, the claims against UHIC are arbitrable based on equitable estoppel. I *must* compel their arbitration. *Edmondson v. Lilliston Ford, Inc.*, 593 F. App'x 108, 111 (3d Cir. 2014) (per curiam) (citations omitted). There is, however, no arbitration agreement between the Medical Groups and Riverside to enforce, so I *must not* send those claims to arbitration.

In such a situation, I may compel arbitration of the claims against UHIC and, in my discretion, stay the remaining claims against Riverside. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 & n.23 (1983); *Mendez v. Puerto Rican Int'l Cos.*, 553 F.3d 709, 712 (3d Cir. 2009). Although Riverside is not entitled to a stay as of right, *Mendez*, 553 F.3d at 712, a stay is appropriate when issues in this litigation and the arbitration would overlap, *Neal v. Asta Funding, Inc.*, Civ. No. 13-6981, 2014 WL 131770, at *4 (D.N.J.

Jan. 6, 2014). Overlap would occur here because the Complaint alleges that UHIC's actions were part of a conspiratorial effort to move patients to Riverside. (Compl. ¶¶ 85–92.) In other words, Riverside has no potential liability independent of that of UHIC. "[I]t would be inadvisable to have these intertwined claims proceed simultaneously in court and in arbitration," so I will stay the claims against Riverside pending the arbitration of claims against UHIC. *Neal*, 2014 WL 131770, at *5. Accordingly, I do not take up the motion to dismiss for failure to state a claim.

## III. CONCLUSION

For the reasons set forth above, the motion to dismiss for lack of personal jurisdiction is granted as to defendants UnitedHealth Group, UnitedHealthcare Community Plan, Optum, and Optum Care. The motion to compel arbitration is granted as to UHIC and denied as to Riverside. The remaining claims against Riverside are stayed pending the arbitration outcome of arbitration. The motion to dismiss is administratively terminated, subject to renewal if and as appropriate.

A separate order will issue.

Dated: June 8, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**